THE COLUMBUS & ROME RAILWAY CO. v. CHRISTIAN.

1. For the wrongful act of an employee of a railroad company resulting in injury to another, committed while engaged in the performance of the company's business in the line of his duty, the company is liable. But if while so engaged, upon account of some private feud previously existing or suddenly arising wholly disconnected with his duties as such employee and not pertaining to the business then in process of transaction (the company then not owing to the other person the duty of personal protection), he commit injury upon the person of another, the company would not be liable. The turning point in the present case being whether the agent of the company wrongfully slew the husband of the plaintiff, and, if so, whether it was done while he was engaged in the transaction of the company's business in the line of his duty, because of differences arising in the settlement thereof, or whether he committed the homicide because of a personal grievance wholly disconnected with the business then in hand, it was error for the court to charge generally, and without qualification, as follows: "If you believe from the testimony that Dixon was not justifiable in taking the life of Christian, then I charge you that the plaintiff would be entitled to recover for whatever damages the evidence shows she has sustained by reason of the death of her husband."

2. If the homicide be wrongful, whether the offense be properly classed as manslaughter or murder would not be material; but if the agent was justified in its commission, no liability would arise against the company, whether the act was committed by him while engaged in the business of the company in the line of his duty, or otherwise.

3. When in the course of a judicial proceeding it becomes material to inquire whether one is, generally speaking, a "dangerous man," evidence of general reputation with respect to those particular characteristics which tend to establish the fact, is admissible; but it is not competent for the party offering the witness for that purpose in such a proceeding to show affirmatively by him particular acts of violence or manifestations of petulance in a particular instance upon the part of the person whose character is under investigation.

August 16, 1895. Brought forward from the last term.

Action for damages. Before Judge Butt. Harris superior court. April term, 1894.

*C. J. Thornton, H. C. Cameron, Peabody, Brannon, Hatcher & Martin* and *Little & Little*, for plaintiff in

error. *J. W. Park, Blandford & Grimes, L. F. Garrard* and *T. Y. Crawford,* contra.

ATKINSON, Justice.

1-2. Twice before this case has been before this court for review. The decision made upon its first appearance is reported in 79 *Ga.* 460, and that made when it was last here appears in 90 *Ga.* 124. The law of the case seems to have been practically settled by the decision first above indicated. In that case, upon authority of our code provision, it was ruled that liability of railroad companies for injuries committed upon others by persons in their employment was not confined to injuries inflicted by their servants while engaged in running and operating their cars, but extended to injuries inflicted by their employees in the conduct of their business other than those resulting from negligence in running their trains, etc. The effect of this construction placed upon this section of the code is to eliminate entirely from the region of doubt the proposition as to whether railroad companies are answerable generally for torts committed by their employees while engaged in the transaction of the business of their employer. Whatever room there may be for the consideration of that question by courts in other States, we are concluded, not only by the code provision above referred to, but likewise by the adjudications of this court upon that section of the code. But while the section of the code in question lays down the proposition broadly, that for damage done by any person in the employment and service of such company the latter shall be liable, such language must be understood to mean such torts only as are committed by an employee while engaged about the business of his employer; for it cannot be presumed that the legislature intended that the mere circumstance of a person being in the employment of a railroad company, should render it liable for all torts committed by such employee, whether in any manner connected with the performance of his duties to his employer or otherwise.

Such a construction would impose upon the employer a responsibility for the probity of an employee's conduct in all the relations of life, and under those circumstances under which the employer could not by possibility exercise the slightest, much less a controlling, influence over the conduct of the person employed by it. Therefore, to make it answerable, the tort must have been committed by the employee, not necessarily by the authority of the master either express or implied, but by him while he was engaged about the business of his master. But if while the employee is engaged about the business of his master, upon some matter or some provocation wholly disconnected with the performance of his duties as a servant, upon some private feud, in an altercation with a third person, he should commit an injury upon such third person, such injury would not fall within the class for which the master is liable, unless it be a case in which, by reason of the relation existing between the person thus injured and the railroad company, the latter owed to the former the special duty of personal protection, as in the case of a passenger before the completion of his journey. Of course in such a case, if an employee, charged with the duty of executing upon the part of the master the contract of passenger carriage, should wrongfully inflict injuries upon the person of the passenger, the carrier would be liable.

In the present case, the husband of the plaintiff was a patron of the defendant, having frequent occasion to deal with it and its agents touching the transportation of freight; and in the course of one of his visits to the freight office of the defendant, and while engaged in discussing his business relations with the agent of the company, he was slain by the agent. The turning point in the case was whether the agent of the company wrongfully slew the husband of the plaintiff, and, if so, whether it was done while he was engaged in the transaction of the company's business in the line of his duty because of differences arising in the settle-

ment thereof, or whether it was wholly disconnected with the business in hand.    Upon this question the court charged the jury: "If you believe from the testimony that Dixon [meaning the agent of the defendant] was not justifiable in taking the life of Christian [plaintiff's husband], then I charge you that the plaintiff would be entitled to recover for whatever damages the evidence shows she has sustained by reason of the death of her husband."

The husband of the plaintiff, as we have seen, was a patron of the defendant.    He was at the place where he was killed, rightfully and upon the implied invitation of the company to transact his business with its agent, and in the transaction of such business  he was at least entitled to protection against the violence and insults of such agent.    If in the course of the transaction of such business, upon provocation growing out of the negotiations between the parties, he was wrongfully slain by the agent of the company, the latter would be liable.    But even though the homicide might have occurred during the time the negotiations were pending between the agent of the company and the deceased, if the deceased was slain by the agent upon some private feud growing out of other matters wholly disconnected with the transaction of the business then in hand, and upon some provocation given by the deceased, the company would not be liable.    If, however, the agent of the company took advantage of the opportunity afforded by the presence of the deceased at his place of business to bring about a difficulty with the deceased upon the occasion of some previous private quarrel, the company would be liable because of the obligation imposed upon it by law to at least afford to its patrons protection against the violence of its agents, when the patron is himself without fault and is engaged about his business with the company.    If, however, the patron himself provoke a difficulty which terminates in his homicide, thus withdrawing the agent from the business of the company to engage in a settlement of an

outside controversy with himself, the company would not be answerable for the consequences resulting to such patron from the violence of the agent thus provoked; or if the patron were himself guilty of such disorderly conduct as would authorize his expulsion from the premises, the agent of the company might be authorized to expel him, using only such force as would be necessary to accomplish that purpose; but such conduct or provocation would not justify the homicide of the patron upon the part of the agent, and the company could not exonerate itself from liability for the consequences of the act of the agent done on its behalf, without showing that the agent was justified in the premises. Of course, if the homicide committed by the agent was justifiable, the justifiable act of the agent could not be made by relation the wrongful act of the company. We think, therefore, that when the court made by its charge the question as to whether or not the act of the agent was justifiable the sole test of the liability of the company for the damages resulting from the homicide of the plaintiff's husband, it left entirely out of consideration the question as to whether or not the homicide was committed under such circumstances as would excuse the company from liability upon the theory that it was a mere personal conflict wholly disconnected from the business of the company. Whether or not the wrongful act alleged to have been committed was committed by the servant, and if so, whether it was done in the course of the transaction of the business of his employer, or upon independent provocation, for the consequences of which the company would not be liable, are questions for the jury and should have been submitted for their consideration. If the homicide be wrongful and committed in the course of the transaction of the business of the company, it can make no difference whether the offense committed by the agent be classed as manslaughter or murder, the company would nevertheless be liable; but if the agent was justified in its commission, no liability could

arise against the company, whether the act was committed by him while engaged in the business of the company in the line of his duty, or otherwise.

3. In the course of the trial a number of witnesses were introduced for the plaintiff, tending to show that Dixon, the agent of the company, was a dangerous man, and it was sought to establish this fact, not by general reputation, but by proving that he had had a number of disputes and altercations with different persons; and a motion was made to rule out all of this class of evidence, upon the ground that it was irrelevant and upon the further ground that it was not admissible for the purpose of showing the dangerous character of the defendant's agent.

Proof that one is a dangerous man in a general sense involves an inquiry into the character of the person alleged to be dangerous, and any evidence of the existence of a general reputation which tends to establish such a character would be admissible; but it is not competent for a party who offers a witness for the purpose of proving general reputation, either to show particular acts of violence, or manifestations of petulance in particular instances upon the part of the person whose character is under investigation. Where it is sought to establish as against a party or witness a special general character, such general character must rest largely upon the opinions of witnesses, based upon their observation of the conduct of the individual, and upon the impressions formed upon their minds by reports from other persons touching such character; and while upon cross-examination it may be competent to test the value of the opinion of the witness by an inquiry into the knowledge of those particular facts upon which his opinion rests, the reputation of the person whose character is under review, must at last be established by general reputation, and not by special acts. As has been well said by the Supreme Court of Pennsylvania, in the case of Frazier v. Pa. R. R. Co., 38 Pa. St. 110: "Character grows out of special acts,

but is not proved by them. Indeed, special acts do very often indicate frailties or vices that are altogether contrary to the character actually established, and sometimes the very frailties that may be proved against a man may have been regarded by him in so serious a light as to have produced great improvement of character." We think, therefore, that if evidence of the reputation of the agent of the defendant company as a dangerous man was material, such reputation could not be proved by particular acts, nor by manifestations of petulance upon particular occasions. See Greenleaf on Evidence (15th edition), vol. 1, p. 94.          *Judgment reversed.*