GEORGIA R. R. & BANKING CO. *v.* RICHMOND.

1. If one who had purchased a railroad ticket, intending to take a train about to arrive but who failed to do so because he did not succeed in getting his baggage checked in time to be placed on that train, left the premises of the railroad company and registered at a hotel, intending to take a train to his destination the next morning; and afterwards, on the day he purchased the ticket, returned to the station to make inquiries about, or arrange for the storage, or checking, of his baggage, he was not at that time a " passenger"; but nevertheless, had the right to go to the station for the purpose stated, and, if he conducted him-

self properly, was entitled to respectful treatment from, and immunity from an unlawful assault by, the agent while engaged in transacting with him the business mentioned; and such an assault would, under such circumstances, give a right of action against the company.

2. If, however, the real purpose in returning to the station was not to look after, or arrange for, the checking of baggage, or to attend to other legitimate business with the agent, but merely to upbraid him' for a real or supposed breach of duty occurring at an earlier hour of the day, and a difficulty thereupon ensued, the two met as ordinary citizens, and the railroad company had no concern in what passed between them.

3. Where, on the trial of an action against a railroad company for an alleged assault and battery by its station agent upon the plaintiff, one of the defenses was that the plaintiff had, without sufficient provocation, used to the agent opprobrious and insulting language, accompanied with sneers and contemptuous gestures, and there was evidence to support this defense, it was error to charge, without qualification: "Sneers, looks or contemptuous gestures will not justify an assault by an agent of a railroad company upon one who has a ticket and has become entitled under the contract to courteous treatment, until the contract was fully carried out by the railroad company or its agents." A similar charge was held not to be erroneous in *East Tenn., Va. & Ga. Ry. Co.* v. *Fleetwood,* 90 *Ga.* 23, but in that case the plaintiff below was a passenger actually riding upon the defendant's train, and entitled to protection at the hands of the conductor who assaulted him; and the facts were in other respects wholly different from those of the present case.

May 23, 1896. By two Justices. Argued at the last term.

Action for damages.    Before Henry T. Lewis, judge *pro hac vice.*    Morgan superior court.    March term, 1895.

The plaintiff, who was a commercial traveler, arrived at Madison at 4:45 p. m., April 18, 1892, on the train of the Macon & Northern Railroad. His objective point was Augusta, for which he desired to take the Georgia Railroad train which arrived at Madison from Atlanta four or five minutes after the arrival of the Macon & Northern, upon the stopping of which he quickly left it, hurried across to the Georgia depot and bought a ticket to Augusta from H. T. Guest, the Georgia railroad agent, at the same time producing his Macon & Northern baggage-check and request-

ing that his trunk be rechecked to Augusta. Guest said, "I am afraid you have not time. The Georgia train will be in in a minute or two." Plaintiff pointed out to him the trunk, which in the meantime had been placed on the ground between the tracks of the two-railroads, and about twenty feet from the Georgia track. Guest said, "If you will have it brought over to our side of the track, I will have it checked." Plaintiff then returned to the Macon & Northern agent, surrendered the check he had, and asked how he could get his trunk over. (It weighed about 200 pounds, and he could not handle it alone.) This agent referred him to the Georgia agent, and, on being told of what had already passed between him and plaintiff, pointed out two negroes who might be procured to carry the trunk. Plaintiff endeavored to get them to carry it, but they refused. In the meantime the Georgia train had come, and when it stopped the open doors of the baggage-car were directly opposite and alongside the trunk. Plaintiff again approached Guest, who was standing at the other door of the baggage-car, on the depot side, informed him that he could not get the trunk over, and asked him to allow it to be put in the car from the opposite side, and to check it. Guest replied, it was too late; the train would not wait. About a minute after this the train started off. The Macon & Northern agent testified that it would have been easier and more convenient to have put the trunk in the car from where it was, than to have carried it across the tracks to the Georgia depot platform. There was dispute as to whether the trunk, while on the ground, was on premises of the Georgia or the Macon & Northern; but the tracks of the two railroads were not over fifty or sixty feet apart. After the train left, plaintiff went to a hotel in Madison and there registered, and returned to the railroad depot about half an hour later, for the purpose (as he testified) of checking his trunk for the next morning's train, which was the next train carrying baggage. He found it on the ground at the same

spot where it had been placed. It contained his samples, valuable silks, etc., without which he was not able to do business; and this was the reason he assigned for not going on to Augusta on the first train and leaving the trunk to be sent to him on the next day. He testified that he was afraid to leave the trunk exposed as it was, and so again approached Guest and asked him where he wanted the trunk put, whether on the platform or in the depot; to which Guest answered, "Put it wherever you please." Plaintiff said: "It is not where I please, but where you want it. I am a stranger in Madison. I have never been treated in the way you have treated me before; your company does not seem to encourage traffic over its road." Guest remarked that plaintiff had made no proper effort to get his trunk checked, that the Macon train was five minutes ahead of the Augusta, and he had plenty of time. Plaintiff replied that he did all he could or knew how to do, and had made every effort; that he was anxious to get to Augusta; and that he considered that he had been badly treated, and should not forget it. Guest said, "You did nothing to get away," and plaintiff replied, "That is not true." He was then standing at the door of the depot, smoking a cigar, with one hand in his pocket. He made no gestures towards Guest. Suddenly (the assault being unexpected, and plaintiff being quite unprepared for it) Guest pushed him into the depot, at the same time tripping him so that he fell to the floor, and then jumped on him, striking and kicking him repeatedly, breaking his collar-bone with one kick, and otherwise injuring him. Two small dogs belonging to Guest came snapping and biting at plaintiff's face as he lay on the floor; and being frightened by this, he said he would give it up if Guest would call off the dogs. As he left the depot, Guest said to him, "That will learn you how to speak to a gentleman." His injuries confined him at Madison for a month, whereby he endured much suffering, lost time

from his business, paid expenses for surgical treatment and attention, etc.

Guest's account of the transaction (he being corroborated in material respects by other witnesses) was, in brief, as follows: As plaintiff paid for his ticket he put down a check, saying he had a piece of baggage at the other depǿt,. which he desired to go. I told him I didn't have time to check his baggage, but if he would go over and give up his check and have his baggage brought over, I would have it put on the train for him. I didn't have time to check it, as we have to give receipts for baggage and write it down on our books. He went to the Macon and Northern Railroad. When the Georgia train came, I went to the baggage-car, finished my business with the baggage-master, and turned away, when plaintiff approached and said, "What are you going to do about my baggage?" I said, "We can't get it on this train; you didn't get it over." He said, "I couldn't get it over. " I said, "Give me the number of your check, and I will send it down to you in the morning." He produced a check; our train was just then starting; he turned from me and jumped upon the platform where he had placed his valise, walked very leisurely to the end of the platform, set his valise down, and then got on the ground himself. The train was moving on slowly. He reached up and got his satchel, and by the time he got out to the track the rear coach was passing. He took hold of the rail and ran along with the car several steps, then loosed it and turned to me. I don't remember his words, but he seemed to be very angry, and wanted to censure me for his getting left. I told him I was not to blame that he didn't get his baggage over. If he had done so, I would have had it put on the train. He had a good deal to say about our poor accommodations, and I had neglected my duty, and that it was my business; but it was not my business. We do sometimes transfer baggage as a matter of accommodation, but I was not required to do it. He talked in a very

insulting manner. He said he wouldn't forget this occasion soon, nor this place. He was inclined to be boisterous, and seemed angry as well. As well as I remember, I told him I was not to blame for his being left, that he didn't get his baggage over; and he said, "I'll see about this," or something to that effect. He went up town. About thirty minutes afterwards he came to the door of the depot and said, "What do you want done with my baggage now, sir?" Remembering how he had spoken to me before going up town, his language wasn't such as induced a very courteous reply; and I said to him, I didn't care what he did with it, but stated, "If you want it checked, bring it on the platform and I will check it for you." He said, "When is the next train?" I told him the next train was the night train, 1:18, and I couldn't check it for that train, as we didn't meet it; that the next train was 10:45 the next morning, and I would check his baggage for that. He said, "I have got to stay here and pay a hotel bill of a dollar or two dollars, besides losing time, all on account of your carelessness and neglect of duty." His manner was snappish. I said to him, I wasn't to blame for his getting left; and if he wanted his baggage checked, have it brought over and I would check it for him; but that there was no use in his talking to me in that manner, and I didn't like it. He said, "I know you don't like it, but you have got to take it." I was standing about ten feet from him. As I approached him I said, "I don't know so much about that; whether I have or not." He said, "I am here; I haven't gone anywhere." It began to look like somebody had to fight. Still I didn't hit him, but said to him, "There was at least five minutes between the arrival of those trains, and you had ample time to have gotten your baggage over, if you had made the proper effort to do so." He said, he did make a proper effort to get it over here, and there was no five minutes between those trains; and shaking his finger in my face, he said, "You are telling something not true,

and you know it." As soon as he said that, I struck him and we grappled and tussled, and finally fell to the floor. I crawled on top of him and struck him two or three times. My blows didn't amount to anything. During the scuffle the two little terriers ran out and barked. I did not set them on. When he said he would take it back, and repeated it two or three times, I got off and he jumped to his feet, picked up his hat, and as he went out I said to him, "You will know how to treat a gentleman hereafter." I did not kick plaintiff. I thought him a very stout, able-bodied man, etc.

The jury found for the plaintiff $365, and defendant's motion for a new trial was overruled._ The motion alleges, that the verdict is contrary to law and evidence, and to specified portions of the court's charge to the jury; that it was error to charge in the language set forth in the third head-note; and that the court further erred in charging, that if the defendant's agent committed an unlawful assault upon plaintiff while he was transacting business with the agent pertaining to his agency, the defendant would be liable for such wrongful act,—defendant contending that the evidence did not reasonably sustain the hypothesis submitted.

*Joseph B. & Bryan Cumming* and *J. A. Billups,* for plaintiff in error. *Foster & Butler,* contra.

LUMPKIN, Justice.

The facts are stated by the reporter.

We do not think Richmond was a "passenger'" when he returned to the railroad station the last time on the day he claims to have been unlawfully assaulted and beaten by the company's agent. He had no purpose of taking a train that day, having decided to resume his journey on the following morning. However, he undoubtedly had the right to go to the station for the purpose of looking after his baggage and arranging to have it checked, or safely stored until the next

day. If he went there to attend to this business, and conducted himself properly, he was entitled to respectful treatment from the agent; and if the latter, under these circumstances, unlawfully assaulted and beat him, it was his right to hold the company responsible in damages. The law on this subject is too well settled to require the citation of authority. It may, in this connection, be proper to add, however, that even if Richmond went to the station for the lawful purpose of attending to the business above mentioned, it was nevertheless incumbent upon him to treat the agent with the same respect due him by the agent. Therefore if, instead of so doing, he without provocation used insulting or opprobrious language to the agent, which naturally enough resulted in a difficulty, the company should not be held responsible. In other words, if Richmond, by his own improper behavior, unfitted the agent for exercising the care and prudence which were essential to his performing in a proper manner his duty to the company and to the plaintiff, the latter should not complain. The case would then stand somewhat like that of *Peavy* v. *Ga. R. R. & Banking Co.*, 81 *Ga.* 485, in which Judge Bleckley remarked that "the plaintiff spoiled the instrument, and then sued the manager because the performer did not make good music. It was the plaintiff's fault that the [company's servant] was out of tune."

2. If, however, the truth be that Richmond went to the station, not really for the purpose of transacting any legitimate business with the agent, but simply to upbraid or reproach him because of a real or supposed grievance occurring at an earlier hour of the day and a difficulty then arose between these men, it was one in which the company had no concern whatever, and should be treated as any other fight occurring between ordinary citizens. In connection with what is said above, see the opinion of Atkinson, Justice, in the case of *Columbus & Rome Railway Co.* v. *Christian*, 97 *Ga.* 56.

3. The court charged the jury as stated in the third head-note. We do not think this instruction was adapted to the facts and circumstances of this particular case. It is true that in the case of *East Tenn., Va. & Ga. Ry. Co.* v. *Fleetwood*, 90 *Ga.* 23, a similar charge was held not to be erroneous; but that was a totally different case upon its facts. It there distinctly appeared that the plaintiff was a passenger riding upon the defendant's train, and accordingly, was entitled to protection at the hands of the conductor who assaulted him. The charge in question was, perhaps, appropriate with reference to the facts of that particular case, but should not be taken as expressing a general principle applicable alike to all cases of a somewhat similar nature.

*Judgment reversed.*