## CITY ELECTRIC RAILWAY COMPANY *v.* SHROP-SHIRE, by next friend.

1. While, under ordinary circumstances, a railway company will be held legally responsible for the manner in which its conductor undertakes to exercise its right to expel from its cars one not entitled to ride thereon, yet where such a person expressly refuses voluntarily to alight, insultingly challenges the conductor to attempt to put him off, and then violently assaults the conductor upon his proceeding in a lawful manner to make the expulsion, and the latter thereupon resents and responds to the attack by resorting to great and unnecessary violence, the company will not be liable in damages for personal injuries thus inflicted, provided the assault made upon its servant was of such a nature as to excite his passions and render him unfit for properly performing the duties devolving upon him in the premises. This is so, because the person injured, by his own grossly improper conduct, is to be regarded as having forfeited his right to immunity from unnecessary violence by inviting the conductor to disregard and abandon his official duties and enter into a personal encounter on his own account and upon his individual responsibility.

2. There being in the present case evidence to show that the encounter between the plaintiff and the defendant's conductor was of the nature above indicated, and the law as announced in the preceding note constituting

the main ground of defense relied on, it was error for the court, in its charge to the jury, to completely ignore the issue thus presented.

3. Evidence as to what transpired during a subsequent difficulty occurring upon the same night, between the conductor and the plaintiff and two of his brothers, was properly rejected as being wholly disconnected with the main transaction under consideration, and as having no material bearing upon the merits of the case.

Argued April 14, — Decided May 5, 1897.

Action for damages.    Before Judge Harris.    City court of Floyd county.    February term, 1896.

*Reece & Denny*, for plaintiff in error.

*E. P. Treadaway, Seaborn Wright* and *Dean & Dean*, contra.

LUMPKIN, P. J.    1. As a general rule, a railway company will be legally responsible for the misconduct of its conductor, or other duly authorized agent, whilst undertaking to exercise on its behalf its right to eject from its cars a person not entitled to ride therein.    *Higgins* v. *Southern Railway Co.*, 97 *Ga.* 751, 25 S. E. Rep. 837.    And that the company's servant may have exceeded the authority with which he was clothed, or have acted in direct disregard of express orders given him in the premises and in violation of the duty with which he was entrusted, will not ordinarily constitute a defense which the company will be heard to urge in its justification, as against one who has unjustly suffered from the wrongful act of such servant.    This is so for the palpable reason that, the right to summarily eject intruders from its cars being coupled with a condition that such right must be exercised in a lawful manner, the company can not delegate to an agent the power thus conferred upon it by law without at the same time becoming strictly answerable for any abuse thereof on the part of its agent.

The general rule above stated is, however, subject to a very just and salutary exception, resting upon that broad principle of natural equity which precludes one from complaining of the act of another which the injured party has himself brought about by his own grossly improper conduct.    This exception was thus stated and applied in *Peavy* v. *Georgia Railroad & Banking Co.*, 81 *Ga.* 485 :    " If a disorderly passenger defies the conductor, draws a pistol, and thereby induces the conductor to

arm in order to expel him from the train, and if after expulsion he still uses grossly obscene and profane language, reeking with insult, on which a mutual combat with pistols ensues, the railroad company is not liable for the consequences though the expelled passenger be wounded in the conflict, even if the conductor, excited by danger and irritated by insult, be not fully excusable for the shooting. It is unjust to a master wrongfully to unfit his servant for exercising the care and prudence which are essential in guarding the master's interest and performing the servant's duty." Twice since has this court approved and recognized as correct the doctrine announced in that case. *Columbus & Rome Railway Co.* v. *Christian*, 97 *Ga.* 56, 25 S. E. Rep. 411 ; *Georgia Railroad & Banking Co.* v. *Richmond*, 98 *Ga.* 495, 25 S. E. Rep. 565.

Unquestionably, when the company undertakes, through the medium of agents, to perform the duties it owes to the public, it is bound to exercise due diligence in an effort to select for its agents such persons only as are apparently competent and trustworthy, and capable of properly performing the duties assigned to them. The obligation thus imposed by law upon the company may be analogized to that resting upon it of employing suitable and reasonably safe machinery and appliances. A railway company, " in providing appliances, is not required to adopt every invention as fast as made, or select at [its] peril the best, or things absolutely safe. What is suitable and ordinary in point of safety will suffice." Bish. Non-Contract Law, § 646. In selecting its human agents the company is under no higher or more stringent duty. If a conductor whom it has selected is apparently an efficient and properly disposed person to perform the duties for which he is employed, the company should not be held accountable if, under the stress of a sudden, unexpected and extraordinary emergency, he falls short of absolute perfection. Certainly is this true if such an employee is mistreated and abused in a manner never expected by the company, or if a wholly improper test is made of his strength and fitness for the position he occupies, by subjecting him to an ordeal which no self-respecting man could likely endure. Every such man, however capable and patient

he may usually be, is more or less easily set awry, and can not reasonably be expected to withstand every provocation to which he may be subjected, or to steadfastly and perfectly perform his duties under any and all circumstances.    It could not be seriously contended that a person who wilfully or capriciously tampered with important mechanical appliances provided by the company for use in the running of its cars, thereby getting the same so out of order that they became incapable of properly performing their office, would be heard to assert that the company failed in its duty to guard him against danger, if, in consequence of his own wrongful act in thus placing it beyond the power of the company so to do, there followed a catastrophe from which he received injury.    This being true, still less has a passenger or any one else the right to " tamper with," or get out of proper working condition, a fellow-creature whose brain and muscle and heart are most essential agencies in his employer's service.    Though there is to some extent a notion to the contrary, we are firmly of the opinion that a railway conductor is, in common decency, if not in law, entitled to some degree of respect and consideration at the hands of those with whom his duties bring him in contact.    But even if it were otherwise, and for the sake of the argument conceding the absurd proposition that the general public has a right to regard and treat him as a mere machine, every one must be held to do so at his own peril ; for the general public is bound to take cognizance of and warning from the widely known fact that, under the laws of nature by which such a " fearfully and wonderfully " constructed "machine " is governed, however harmless it may be when handled in a proper and legitimate manner, it may nevertheless become an instrument of more or less danger when wrongfully subjected to outrageous and inexcusable misuse.

Under such circumstances as are detailed in the first head-note, it could not reasonably be expected that the average conductor would remain a nicely-adjusted, well-regulated and passive functionary ; and it follows that the company would not be legally responsible for the consequences if its conductor, thus goaded into a state of excitement, exasperation and resentment, should himself do wrong by resorting to great and unnecessary violence ;

provided, of course, that the insult and abuse to which he was subjected were of such a nature as naturally to excite his passions and render him unfit to perform in a proper and lawful manner the duty he owed his master and the latter's patrons. One who voluntarily, and by his own misconduct, places it beyond the power of a master to protect him, surely can not complain of an omission so to do. Especially is this true where he practically invites the master's servant to disregard and abandon his official duties and enter into a personal encounter on his own account and upon his individual responsibility.

2. On the trial of the present case, the defendant company introduced several witnesses, including its conductor and motorman, from whose testimony the following, in brief, appeared: About 8 o'clock in the evening, the plaintiff waved down a car upon which these witnesses were riding, and, upon its being stopped for him, got on and asked for a bundle which he said his sister had left on the car earlier in the day. A bundle upon which was written the name of a young lady was thereupon shown him, but he said it was not the one of which he was in search. They looked further, but could not find his bundle. He then sat down in the car. Before it was put in motion, he was told to get off, but declined to do so. Some one rang the bell, and the car started off, and the plaintiff then said, if they did not stop the car, he would go on to town. A signal was given for the car to stop, which it did, and he was again told to get off, and informed by the conductor that the car was five minutes behind time and that they could not fool away time with him. He replied, " Damn you ! you are bigger than I am ; put me off." Upon the conductor's then taking hold of his arm, he struck the conductor " a pretty hard lick " in the breast and started to jump off, and while in the act of doing so, was kicked by the conductor and fell to the ground. The car had stopped sufficiently long, the second time, for the plaintiff to have left it in safety, but was just starting off again when the plaintiff attempted to jump. As soon as he struck the ground, he commenced hunting for rocks, and the car proceeded on its way and left him.

In charging the jury in this connection, the court instructed

them that "if the plaintiff brought about a difficulty, and a difficulty was had, and he brought it about by his own fault, and the defendant went too far and did more than it was authorized to do in ejecting him, in considering what amount of damage you would give, you would be authorized to diminish the amount of the damages proportionate to the fault of the plaintiff in bringing about the result that came upon him." As will readily be seen, this charge entirely cut the jury off from considering the evidence above referred to, for any other purpose save that of determining to what extent they should reduce the plaintiff's recovery in the event they believed the conductor was not wholly justified in using the degree of force to which he resorted. This instruction must have operated very prejudicially to the company; for its main contention was, not that the conductor was fully justified in committing a violent assault upon the plaintiff, but that the latter, by his own grossly improper conduct, unfitted the conductor for observing his duty, and therefore the company should not be held responsible for what he did. The issue thus raised ought certainly to have been submitted to the jury. Yet, nowhere in his charge did the trial judge present this theory of the case. By entirely ignoring practically the only defense upon which the defendant relied for a complete vindication, the trial court committed grave error; and for this reason the case must undergo another investigation.

3. In connection with the evidence which has been above briefly summarized, the defendant offered to prove that later upon the same evening, about 30 or 40 minutes after the plaintiff's expulsion, the same car was stopped in front of his father's house, in order that the conductor might deliver the bundle in question, it having in the meantime been found; and thereupon the plaintiff, together with two of his brothers, made another assault upon the conductor, and a general fight ensued. The court refused, as we think properly, to allow any proof concerning this subsequent difficulty. What transpired during this second encounter, it being wholly disconnected from the main transaction under investigation, could not properly be considered a part of the res gestæ thereof; and having no inde-

pendent evidentiary value of its own as illustrating any material issue in the case, the proof offered was clearly irrelevant and inadmissible.

*Judgment reversed.   All the Justices concurring.*