26854.  SUMMERS *v.* BARRON *et al.*

Decided November 23, 1938.  Rehearing denied December 14, 1938.

*J. Herbert Johnson, A. M. Kelly,* for plaintiff.
*Roberts & Roberts,* for defendants.

GUERRY, J.  The plaintiff's son, a sixteen- or seventeen-year-old boy, was attending the Georgia Vocational Trades School, located near Monroe, Georgia, of which the defendant Barron was president.  It appears that the school was located some distance from the picture show in Monroe, and that the students were accustomed to "pile on anybody's car that came along going down to the moving pictures and coming back."  They oftentimes rode on the running boards of cars.  On the night of the injury and death of the plaintiff's son Harry Edmonds, who worked for and was paid by the government for driving the mail truck and school bus, at the request of Mrs. Barron, took the car belonging to Mr. Barron to drive her nephew (a student at the school), to town and to carry some flowers to the hospital.  Mr. Barron was in Columbus, Georgia, at the time.  Edmonds, a witness for the plaintiff, testified that Barron had given him positive instructions not to allow any one to ride on the running board of his car while he was driving it.  When Edmonds started to Monroe on this particular night, young

Summers and his companion were standing in front of the dormitory and asked permission to ride with him, and Edmonds replied that he did not have room. The boys replied: "Let us hang on," and Edmonds said, "No, coach [the defendant Barron] told me not to let anybody ride on the running board." The boys then requested and were allowed to ride on the running board until they got to the store a short distance away, and when the store was reached a crowd of students were waiting to catch a ride, and young Summers said, "Let me ride on to town, because if you stop these boys will get on." Edmonds drove by the store into the paved highway and, while driving at a speed of twenty-five miles an hour, he saw a car coming and pulled his car to the right and the right wheel ran off the pavement, but the other car, which was being driven by a drunken driver, ran into or sideswiped Edmond's car and killed young Summers, who was standing on the left running board. A witness for the plaintiff, who was young Summers' companion and who was riding on the other running board, testified that Edmonds was not driving fast, that he pulled two wheels of the car off the road, and "did everything he could to avoid the accident. If it had been in the daytime he could have gone over further. He could have gotten the car all the way off the pavement. It was night, he got as far as he could." The undisputed evidence for the plaintiff and the defendant shows that the school had no connection with the car or with the plaintiff's son being on the running board, and it is clearly apparent that no liability was shown as against the school.

It is also apparent that while Edmonds may have been driving Barron's car with his implied consent, and to that extent may have been his agent in the operation of said car, yet Barron had given Edmonds express instructions never to permit any one to ride on the running board of the car. Edmonds' conduct on this occasion in permitting the deceased boy to ride on the running board was contrary to the direct command of Barron, and the deceased himself had knowledge of the order. "'The driver of a motor vehicle, in the absence of express or implied authority from the owner to permit third persons to ride therein, is ordinarily held to be acting outside the scope of his employment in permitting them to do so. Hence, so far as the operator of a motor-truck is knowingly carrying a child in a position of danger, he will be regarded as acting

beyond the scope of his employment,' unless authority therefor from the owner is shown. *Greeson* v. *Bailey,* 167 *Ga.* 638, 640 (146 S. E. 490)." *Brasellon* v. *Brazell,* 49 *Ga. App.* 269 (2) (175 S. E. 254); *Haley* v. *Emerson Lumber Co.,* 12 *Ga. App.* 250 (77 S. E. 100). While it may be inferred under the evidence that an implied permission was given Edmonds, the driver of Barron's car, to permit boys to ride in the car with him, gratuitously, it is without dispute that he was forbidden to permit them to ride on the running board. No contractual relation existed between the defendant and the deceased. If there was an implied permission by the defendant to allow students at the school to ride inside the automobile when it was being driven as in the present case, there was no implied authority given to the driver of the car to permit boys to hang themselves all over the outside of the car because they were not forbidden to ride inside. There was 'in this case an express limitation on the driver's authority so to do, which limitation was stated to the deceased. What we are holding is not contrary to the rule that a master may not, by commanding his servant to be careful, avoid liability, because such servant, in the prosecution of the master's business, is negligent. *Savannah Electric Co.* v. *Wheeler,* 128 *Ga.* 550 (58 S. E. 38, 10 L. R. A. (N. S.) 1176). As was said in *Greeson* v. *Bailey,* supra, "The servant must be acting *both* in the prosecution and within the scope of his 'business." Permitting persons to ride on the running board of the car was not in the prosecution or scope of the master's business, but was an independent venture of the driver opposed to the express command of the master. Irrespectively of the question as to whether young Edmonds was negligent, and whether such negligence may have been a concurrent proximate cause of the injury, the evidence demanded a finding that Barron was not liable for the act of Edmonds in permitting young Summers to ride on the running board. Under this view of the case it becomes unnecessary to consider the assignments of error in respect to the charge of the court. The trial judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., concurs. MacIntyre, J., concurs specially.*

MacIntyre, J., specially concurring. The effect of the decision of the majority of this court is to affirm the judgment directing the

verdict in favor of the defendant, Georgia Vocational Trades School; and further, to affirm the judgment overruling a motion for new trial after the verdict in favor of the defendant, D. I. Barron. In the decision and judgment of this court as to the Georgia Vocational Trades School I whole-heartedly concur. In the judgment as to D. I. Barron, I am prepared to concur, but on entirely different grounds. I can not agree to the apparent doctrine of the decision of the majority in holding that though Edmonds be considered the agent and servant of Barron, with authority to ride the deceased and others for the purpose of transporting them to Monroe, Barron is not answerable for the negligence of Edmonds in permitting the deceased to ride on the running board (conceding as the majority opinion does, that this is, under the evidence, an actionable ground of negligence), for the reason that Barron had given him express instructions not to permit the deceased or any other person to ride on the running board. So foreign is such a ruling to my idea of the fundamental concepts of the doctrine of respondeat superior, and so contrary is such ruling fundamentally to former decisions of this court and the Supreme Court, that I feel justified in raising, and bound to raise, my voice in dissent thereto.

The fact that Barron had given Edmonds positive instructions not to permit any of the students to ride on the running board can no more affect his liability for his negligence in so doing, than could have the fact, in such an action, had he not given such instructions, that he did not command or instruct Edmonds to permit the deceased to so ride, a doctrine which the courts of this State have long since emphatically repudiated. *Gomez* v. *Great Atlantic & Pacific Tea Co.*, 48 *Ga. App.* 398 (172 S. E. 750); *Planters Cotton Oil Co.* v. *Baker*, 181 *Ga.* 161 (181 S. E. 671): Code, § 105-108, provides that "Every person shall be liable for torts committed by his wife, his child, or his servant, by his command or *in the prosecution and within the scope of his business*, whether the same shall be by negligence or voluntary." (Italics mine.) Certainly it is plain, under well-settled principles, that Edmonds, who was according to my colleagues operating Barron's car as his servant for the purpose of transporting the students to Monroe, was not acting without the sphere of his employment, in violating Barron's orders *as to how and in what manner he should transport them*. Such violation had relation merely to the manner in which

the master's business (the transporting of students) was to be per-formed, and it is well settled that under such circumstances the fact of the servant's having departed from his instructions does not absolve the master from liability. In Philadelphia &c. R. Co. *v.* Derby, 14 How. (U. S.) 468 (14 L. ed. 502), it was said: "There may be found in some of the numerous cases reported on this sub-ject *dicta* which, when severed from the context, might seem to countenance the doctrine that the master is not liable if the act of his servant was in disobedience of his orders. *But a more careful examination will show that they depend on the question whether the servant, at the time he did the act complained of, was acting in the course of his employment; or, in other words, whether he was or was not at the time in the relation of servant to the defendant.* . . We find no case which asserts the doctrine that a master is not liable for the acts of a servant in his employment, when the particular act causing the injury was done in disregard of the gen-eral orders or special command of the master. Such a qualifica-tion of the maxim of respondeat superior would, in a measure, nul-lify it.

"A large portion of the accidents on railroads are caused by the negligence of the servants or agents of the company. Nothing but the most stringent enforcement of discipline, and the most exact and perfect obedience to every rule and order emanating from a su-perior, can insure safety to life and property. The entrusting such a powerful and dangerous engine as a locomotive, to one who will not submit to control, and render implicit obedience to orders, is itself an act of negligence the '*causa causans*' of the mischief; while the proximate cause, or the *ipsa negligentia* which produces it, may truly be said in most cases to be disobedience of orders by the servant so entrusted. If such disobedience could be set up by a railroad company as a defense, when charged with negligence, the remedy of the injured party would in most cases be illusive, discipline would be relaxed, and the danger to the life and limb of the traveler greatly enhanced. Any relaxation . . of the law af-fecting such cases would be highly detrimental to public safety." (Italics mine.) In Bayley *v.* Manchester, S. & L. R. Co., L. R. 8 C. P. (Exch. Ch.) 148, 25 Eng. R. Cas. 115, it was said: "The principle to be deduced from the authorities on this subject is that, where a servant is acting within the scope of his employment;

and in so acting does something negligent or wrongful, the employer is liable, even though the acts done may be the very reverse of that which the servant was actually directed to do." In Cosgrove v. Ogden, 49 N. Y. 255 (10 Am. R. 361), it was said: "The defendants were responsible for this act [piling lumber]. . . It was an act done by him [the servant] in the prosecution of their business, and they are not relieved from responsibility therefor by his departure from their instructions in the manner of doing it. The test of the master's responsibility for the act of his servant is not whether such act was done according to the instructions of the master to the servant, but whether it is done in the prosecution of the business that the servant was employed by the master to do. If the owner of a building employs a servant to remove the roof from his house, and directs him to throw the materials upon his lot, where no one would be endangered, and the servant, disregarding this direction, should carelessly throw them into the street, causing an injury to a passenger, the master would be responsible therefor, although done in violation of his instructions, because it was done in the business of the master. But should the servant, for some purpose of his own, intentionally throw material upon a passenger, the master would not be responsible for the injury, because it would not be an act done in his business, but a departure therefrom by the servant to effect some purpose of his own."

Wood on Master & Servant, § 309, pertinently states: "If . . [the servant] was authorized to do the act at all, the master is liable for the consequences of his doing it in a different manner, if the mode adopted by him is so far incident to the employment that it comes within its scope, *for having given the servant any authority in the premises, he alone must suffer for its abuse.*" (Italics mine.) Wharton on Negligence, § 160, states in this same connection: "It may have contravened the master's purposes or directions, but a master who puts in action a train of servants, subject to all the ordinary defects of human nature, can no more escape liability, on the ground of good intentions, from injuries accruing from defects of machinery. Out of the servant's orbit, when he ceases to be a servant, his negligences are not imputable to the master; but within that orbit, they are so imputable, whatever the master may have meant." In *City Electric Ry. Co.* v. *Shropshire,* 101 *Ga.* 33, 34 (28 S. E. 508), it was said: "That

the . . servant may have exceeded the authority with which he was clothed, or have acted in direct disregard of express orders given him in the premises and in violation of the duty with which he was entrusted, will not ordinarily constitute a defense which the company will be heard to urge in its justification, as against one who has unjustly suffered from the wrongful act of such servant." See also *Evans* v. *Caldwell,* 52 *Ga. App.* 475 (184 S. E. 440).

In many cases the courts have affirmed the liability of the master for the negligent acts of his servant done in the scope of his employment, though in violation of orders. The following constitute a few of the cases that I have examined: Heenrich *v.* Pullman Palace Car Co., 20 Fed. 100, where a passenger was injured by negligent discharge of pistol which a railway porter had, in violation of rules, received into his custody; Louisville and N. R. Co. *v.* Whitman, 79 Ala. 328, where section foreman, finding track obstructed, transferred hand car to the track of another company; Buel *v.* N. Y. Steamer, 17 La. 541, where captain of vessel was held liable for the value of a slave carried away in her and so lost to the owner, although the employee by whom the slave was brought aboard had, in so doing, disobeyed orders; Powell *v.* Deveney, 3 Cush. (Mass.) 300 (50 Am. D. 738), where wagon was left in street instead of in specified yard; Fitzsimmons *v.* Milwaukee, L. & C. R. Co., 98 Mich. 257 (57 N. W. 127), where engineer ran a train from one station to another without orders from train dispatcher; Whitehead *v.* St. Louis & C. R. Co., 99 Mo. 263 (11 S. W. 751, 6 L. R. A. 409), where liability of railway company for injuries to a boy permitted by conductor to ride on freight-train was held not to be negatived by the fact that the permission was given in violation of rules; Dreyfus *v.* St. Louis & Suburban R. Co., 124 Mo. App. 585 (102 S. W. 53), where a street-railway company was held liable for an injury caused by the sudden starting of a car while the plaintiff was alighting, though the car had been, in violation of rules, stopped between cross streets; Philadelphia &c. R. Co. *v.* Brannen, 1 Sadler (Pa.) 369 (2 Atl. 429), where locomotive whistle was sounded at a time and in a manner prohibited by rules; Missouri &c. R. Co. *v.* Rodgers (Tex. Civ. App.), 35 S. W. 412, where boy, injured while riding on hand-car by invitation of servants in control, was held entitled to recover, although invitation was contrary to rules; Houston &c. R. Co. *v.* Bulger, 35 Tex. Civ. App. 478 (80

S. W. 557), where servant in full charge of pumping-station disobeyed orders to prevent persons from coming on the premises, and employer was held liable to person who was permitted by him to enter; St. Louis-San Francisco Ry. Co. v. Robbins, 219 Ala. 627 (123 So. 12), where employee hired to deliver messages on bicycle procured automobile for this purpose and negligently injured another person; Federal Compress &c. Co. v. Jones, 180 Ark. 476 (21 S. W. 2d, 857), where employee sent to receive cotton, permitted cotton to be thrown from window, in violation of instructions, by reason of which pedestrian was injured; Bandosz v. Daigger, 255 Ill. App. 494, where corporation occupying building was held liable for death of city fireman, following explosion of benzol improperly unloaded, notwithstanding fact that employee directed unloading contrary to instructions; Thompson v. Union Fisherman's Packing Co., 128 Or. 172 (273 Pac. 953), where instructions given to employee not to run elevator during noon hour, during which decedent was crushed, were held immaterial as regarded employer's liability. Such cases might be multiplied indefinitely.

It was said in Rochester-Hall Drug Co. v. Bowden, 218 Ala. 242 (118 So. 674), "If an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of the employment, is deemed by law to be an act done within the scope of the employment. Gulf, M. & N. R. Co. v. Havard, 217 Ala. 639, 117 So. 223; National Life & Accident Ins. Co. v. Cruso, 216 Ala. 421, 113 So. 396; 39 C. J. 1283. Such conduct, to come within the rule, must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment. Republic Iron & Steel Co. v. Self, 192 Ala. 403, 68 So. 328, L. R. A. 1915F, 516. If conduct was 'committed in the accomplishment of objects within the line of his duties, or in and about the business or duties assigned to him by his employer,' the master is responsible. Palos Coal & Coke Co. v. Benson, 145 Ala. 664, 39 So. 727." "The reason that the master, in any case, is held liable for the negligent acts of his servants is not because the servant, in his negligent conduct, represents the master, but upon the distinct ground that he is conducting the master's affairs, and the master is bound to see that his affairs are so conducted that others are not injured." Philadelphia Coal &c. Co. v. Barrie, 179 Fed. 50, 52. The above

principle is similarly stated in *Savannah Electric Co.* v. *Hodges,* 6 *Ga. App.* 470 (65 S. E. 322), *Louisville & Nashville R. Co.* v. *Hudson,* 10 *Ga. App.* 169, 172 (73 S. E. 30), and other cases.

My colleagues concede that Edmonds was the agent of the defendant Barron to operate the car for the purpose of transporting students to Monroe. He was at the time of the injury to the deceased carrying out this very employment, though he was violating instructions of Barron in permitting the deceased to ride on the running board. He was not acting on his own behalf and for his own private purposes, or on behalf of a third person, but in behalf of his master and his business. If Barron entrusted the automobile to Edmonds as his servant and agent for the purpose of transporting the students to Monroe, and he desired to determine for himself how he should ride them, how fast he should go, how many he should ride, etc., the obligation was on him to see that such instructions were carried out, and that Edmonds did not substitute his own methods for those given him. 39 C. J. 1285, supra. This case is to be distinguished from those cases where a permission for another to ride on the part of the servant is wholly foreign to his employment. See *Greeson* v. *Bailey,* 167 *Ga.* 638 cited in the majority opinion; *Waller* v. *So. Ice & Coal Co.,* 144 *Ga.* 695 (87 S. E. 888); *Turner* v. *Fuller,* 39 *Ga. App.* 184 (146 S. E. 494). In the present case the employment of Edmonds was to operate the car for the purpose of riding others.

My colleagues disclaim, as an answer to my concurrence, any intent to hold that a master may avoid liability for the negligence of his servants by instructing them not to be negligent. That they do not expressly so hold, I am prepared to agree. The effect of their holding, however, is to say that where a servant violates instructions as to the method of doing his master's business, he is ipso facto acting without the scope of his employment, which is another way of holding that which they say they do not intend to hold. It is to this that I strenuously dissent. As a precedent I believe it is unsound and will bring confusion to this branch of the law. To illustrate: let us suppose that a corporation owning and operating a large factory invites the general public to inspect the same. The corporation employs a servant to act as guide, and gives him positive instructions that he is to show the public only to certain parts of the factory and along a designated route. A

member of the public, in response to the invitation, comes to the factory and is taken by the guide to the forbidden portions of the factory and along a forbidden route, and while being so conducted such person is injured by coming into contact with dangerous machinery. Would any court hesitate to hold that the violation of the instructions by the servant would not constitute a valid defense by the employer to an action by such injured person for the injuries sustained? I can not see or find any case that shows any sound distinction between that case and the case at bar. Again, if I may be indulged by a patient bar, suppose a motor common carrier should give its operators positive instructions that they were to ride no more passengers than there were seats provided, but one of its operators, in violation of these instructions, allowed the vehicle to become overcrowded by reason of which one of the persons so required to stand was injured. Could it be held, in an action by such injured person for damages against such carrier, that the servant was acting without the scope of his employment in permitting such person and others for whom there were no seats to ride, and that therefore the carrier was not responsible for his acts? I think not. Yet the reasoning of the majority in the present case is authority for an affirmative ruling. I consider the point ruled upon by the majority one of vast and far-reaching importance, and for this reason I could not content myself with merely marking myself as specially concurring.

I now come to state why I think the judgment of affirmance is correct. I think a verdict was demanded for the defendant, that is, that the evidence failed to show that the driver of the defendant's car was guilty of any negligence for which the plaintiff should recover from the defendant. It appears without dispute from the evidence that the driver of the car which sideswiped that of the defendant, and caused the death of the plaintiff's son, was, at the time, decidedly under the influence of intoxicating liquors; that when he struck the defendant's car it had been driven by Edmonds to the extreme right side of the road; that Edmonds was operating the car with all ordinary care and caution; and that he, in the sudden emergency of seeing a car approaching (at night), swerving from one side of the road to the other, did all that ordinary care required of him.

It is true that Edmonds permitted the plaintiff's son to ride on

212

the running board, and that this is charged as a ground of negligence. However, the plaintiff's son was not a child of tender years, but a boy seventeen years of age—several years beyond the age of discretion, and presumptively familiar with the dangers of riding on the running board. He was not required by Edmonds to ride on the running board. On the other hand, he voluntarily assumed this position, and in the absence of some act of negligence on the part of Edmonds after he had voluntarily assumed this position which caused the injury to the plaintiff's son, or in the absence of a showing that the plaintiff's son was not capable of appreciating the danger of riding on the running board, no recovery could, in my opinion, be had.