## GEORGIA RAILROAD & BANKING CO. *v.* HOPKINS.

If one who is permitted by the agent of a railroad company to remain in the depot at a time when passengers are not usually there allowed leaves the building and enters a car standing at the station, and is there discovered in an act of gross immorality, and upon being required to return to the depot uses offensive and insulting language to and of the agent of the company who ejected him from the car, and continues, notwithstanding a caution not to do so, to use such language until the agent of the company is exasperated and commits an assault upon him, the company is not liable for the consequences resulting from such assault, even though the agent be not fully excusable and the battery inflicted be entirely disproportioned to the insult given.

Argued June 7, — Decided July 22, 1899.

Action for damages. Before Judge Reese. Hancock superior court. August term, 1898.

*Joseph B. & Bryan Cumming*, for plaintiff in error.
*T. L. Reese*, contra.

COBB, J. Hopkins sued the railroad company, alleging that, while waiting at a station on the line of road of the defendant, he was assaulted and beaten by the night watchman, an employee of the defendant, and thereby sustained damages. Upon the trial it appeared from the testimony introduced by the plaintiff that he and others had repaired to the depot of the defendant to await the arrival of a train upon which they intended to take passage; that while in the waiting-room the night watchman came in, and in the presence of the females therein used profane and obscene language, and upon plaintiff remonstrating with him he turned and cursed plaintiff and struck him several licks on the head and shoulder with a pistol which he had in his hands; the plaintiff not having given any provocation either for the words used or the assault made. The

injuries inflicted were painful to the plaintiff, and he suffered therefrom for several months, and was still suffering from the effects of the assault. The testimony introduced by the defendant was, in effect, that the party to which the plaintiff belonged came to the depot some time before the arrival of the train, and at a time when the train was not due and when the waiting-room was not open for passengers; that they asked permission to stay in the depot until the train came; that the night watchman told them that he did not have any coal to heat the room and that he did not allow a crowd to stay about the depot that long in the night. Upon the statement being made that some of them had no place to stay, the night watchman agreed to open the room if they could stay in there without fire. After they were thus permitted to go in, it was so cold that the night watchman divided with them the coal which had been given him for use during the night, and directed them to stay in the room and not to go about the cotton or cars. There were several cars at the depot, some loaded and others empty. Plaintiff and his party were cautioned not to go among the cars and cotton, on account of danger of fire from cigarettes and cigars. The night watchman while making his rounds during the night had his attention directed to some one in a car which was open, and upon going in with his lantern he discovered plaintiff and a woman in the car engaged in an act of immorality, and another man and woman in the car engaged in a similar act of indecency. Upon being compelled to come out the plaintiff took great offense at the conduct of the watchman in thus discovering him, and commenced talking, but the night watchman paid no attention for the time to his talking. The plaintiff continued to talk after he had returned to the waiting-room, and the night watchman hearing him asked him who he was talking about, and received the answer, "I am talking about you." He had been cursing and abusing the night watchman, and was sitting on the seat, and the night watchman caught him by his coat sleeve and pulled him off. He then assaulted the night watchman, who told him if he did not behave he must get out of the room. Further altercation ensued between them, in which very insulting language was used by the plain-

tiff, and finally, being aggravated by the continual insulting language of the plaintiff, the night watchman struck him on the head with his fist, but did not hit him with a pistol. He pulled out a pistol and told him that he had a good mind to shoot him, but he struck him with his fist only. The jury returned a verdict for the plaintiff; and the defendant's motion for a new trial being overruled, it excepted.

The only ground in the motion for a new trial which is insisted upon here is, that the court, after charging the following request: "If you believe that the plaintiff was guilty of immoral conduct in his acts in the depot of the defendant and that as a result of the discovery of such conduct words followed between the plaintiff and the watchman, and that the plaintiff used insulting and opprobrious language to the watchman which naturally enough resulted in a difficulty, the company should not be held responsible for alleged assault by the watchman," added: "That I give you in charge in this connection, or with this added to it: that the assault by the watchman must not be disproportioned to the insult offered; it being still left a question of fact for you to determine whether the battery was disproportioned to the insult." The request should have been given without the qualification. *Railway Company* v. *Shropshire,* 101 *Ga.* 33, and cases cited, establish the proposition, that where a person is injured under such circumstances as the testimony of the defendant in the present case shows the plaintiff to have been injured, he is to be regarded as having forfeited his right to immunity from unnecessary violence by inviting the servant of the company to disregard and abandon his official duty and enter into a personal encounter on his own account and upon his own responsibility; and when the conduct of the plaintiff is such as to thus relieve the company from liability on account of the assault committed by its servant upon the plaintiff, it is immaterial, so far as the question of the liability of the company is concerned, whether the battery was disproportioned to the insult or not. Such being the law, it was erroneous for the judge to qualify the request in the language above quoted. The defendant was entitled to have the evidence introduced by it passed upon by the jury in the

light of the law embodied in the request, and the error committed in qualifying it in the manner stated was of such a character as to require the granting of a new trial. Even if, under the facts of the present case, the plaintiff could be considered a passenger and entitled to the rights of one sustaining that relation to the defendant, if the jury believed the testimony introduced for the defendant, there would be no liability on its part for the assault committed by the night watchman.

*Judgment reversed.　All the Justices concurring.*