## MASON *v.* NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY COMPANY.

1. What purported to be a certified transcript from the docket of the mayor's court of a town in Alabama, certified by a person signing himself clerk of such court, with no seal attached and not certified as provided by the acts of Congress, adopted into the code of this State (Civil Code (1910), §§ 5824, 5827), was not admissible in evidence.

(a) Nor was it rendered admissible because a person, who testified that he presided in the mayor's court of the town mentioned, stated that he had fined the defendant in that proceeding; and that he did not recollect the amount of the fine, "but the amount will be shown by the attached papers certified by the city clerk."

2. Where an action against a railroad company was brought in a county of this State, for the purpose of recovering damages on account of an injury alleged to have occurred in Alabama, after the judge had stated to the jury that the plaintiff had a right to bring his suit in any county of this State where the defendant company had an office or agent, it was error to add, "but the fact that he brought it away from his home, and among strangers, is a circumstance you may consider in so far as it may throw light, or tend to throw light, upon the alleged transaction."

3. In an action to recover against a railroad company on account of a battery committed by its conductor on a passenger, it was not a correct statement of the rule of duty on the part of the company towards the passenger to charge, "I charge you that carriers must treat their passengers respectfully, and protect them, so far as they reasonably can, from injury or insult on the part of their employees."

4. Where a suit was brought against a railroad company for an assault and battery committed by its conductor upon a passenger, if the conduct of the passenger was such as to justify the act of the conductor, the company would not be liable. If the conductor's act was not justified, but mitigated by provocative words or conduct of the passenger

at the time, such mitigation would inure to the benefit of the company. But if the conductor committed an assault and battery upon the passenger, and the words and conduct of the passenger were such as to arouse the anger of the conductor and to tend to provoke a difficulty, but not such as to justify the act of the conductor, this would not free the company from liability.

(a) *Peavy* v. *Georgia Railroad & Banking Co.*, 81 *Ga.* 485 (8 S. E. 70, 12 Am. St. R. 334) ; *Georgia Railroad & Banking Company* v. *Richmond*, 98 *Ga.* 495 (25 S. E. 565) ; *City Electric Railway Co.* v. *Shropshire*, 101 *Ga.* 33 (28 S. E. 508) ; *Georgia Railroad & Banking Co.* v. *Hopkins*, 108 *Ga.* 324 (33 S. E. 965, 75 Am. St. R. 39) ; *Central of Georgia Railway Co.* v. *Motes*, 117 *Ga.* 923 (43 S. E. 990, 97 Am. St. R. 223) ; *Dannenberg* v. *Berkner*, 118 *Ga.* 885, 889 (45 S. E. 682) ; *Macon Railway & Light Co.* v. *Mason*, 123 *Ga.* 773, 776 (51 S. E. 569), reviewed and modified so as to conform to the ruling now made.

FEBRUARY 18, 1911.

Action for damages.     Before Judge Fite.     Dade superior court. December 6, 1909.

*J. P. Jacoway, H. P. Lumpkin, Paul D. Wright, J. E. Rosser,* and *W. M. Henry,* for plaintiff in error.

*Payne, Foust & Payne,* and *Brown, Spurlock & Brown,* contra.

LUMPKIN, J.     Mason brought suit against the Nashville, Chattanooga & St. Louis Railway Company to recover damages on account of an alleged assault by the conductor of the defendant.     The defendant contended that the plaintiff was drunk and disorderly, used foul and abusive language to the conductor, and brought on the difficulty, and that the conductor was justified in what he did, or, at least, that the company was not liable.     The jury found for the defendant.     The plaintiff moved for a new trial, which was refused, and he excepted.

1.     What purported to be a certified transcript from the docket of the mayor's court of Bridgeport, Alabama, certified by a person signing himself "Clerk Mayor's Court of Bridgeport," with no seal attached, and not certified as provided by the acts of Congress, adopted into our code, was admitted in evidence over objection. The presiding judge, in admitting it, said: "As the certificate shows that he appeared and pleaded guilty, let it go in so far as it may show an admission that he was intoxicated on that day.     Let it go in for that purpose."     The certificate was not such as to render the purported transcript admissible in evidence.     Civil Code (1895), §§ 5237, 5238 (Civil Code (1910), §§ 5824, 5827).     Nor do we see how an inadmissible certificate became legal evidence because

it undertook to certify to an admission or plea of guilty. This certificate was attached to answers of a witness to interrogatories, tending to show that the witness had presided in the mayor's court and had fined the defendant in the proceeding, when brought before him; and that he did not recollect the amount of the fine, "but the amount will be shown by the attached papers certified by the city clerk." This reference did not make the transcript admissible.

2. The court charged as follows: "Now, gentlemen, I will state in the outset that the plaintiff had the right to bring his suit in this county or in any other county where the defendant company had an office or agent; but the fact that he brought it away from his home, and among strangers, is a circumstance you may consider in so far as it may throw light or tend to throw light upon the alleged transaction." If the plaintiff had a legal right to bring suit in Georgia, this charge brought into the case a new issue,—his motive or reason for so doing. If this were an issue for the jury, the plaintiff and defendant could introduce evidence in regard to it, and a collateral question would be injected into the main trial. Suppose he had been asked why he had brought the suit in this State, and had replied that the rules of practice or evidence in Georgia were more favorable to such suits than those of Alabama, would it have been competent to enter into a trial of the relative effect of the rules of practice or evidence of the two States on the subject of damage suits? Or suppose he had answered that the presiding judge of the circuit in Alabama where the suit could be brought was his personal enemy, could evidence pro and con as to the truth of this statement have been introduced, and could a trial of the qualification of a foreign judge have been superimposed upon the trial of the claim for damages? Where would be the limit of the examination, if the motive or reason of a plaintiff in selecting a certain jurisdiction, where he had a right to sue, could be made an issue in the case?

The fact that counsel on both sides had commented on the location of the suit, and that the plaintiff's counsel orally requested a charge that the plaintiff had the right to bring it in the county where it was brought, did not authorize an additional charge that his bringing it away from home and among strangers was a circumstance which the jury might consider, "in so far as it may throw light, or tend to throw light, on the alleged transaction." The "alleged transaction" was an assault by a conductor on a passenger,

occurring in Alabama. How could a choice of jurisdiction, if lawful, throw light on the alleged assault? If there might be a case where something appearing on the face of the record or the manner of conducting a trial might furnish legitimate ground for the jury to consider, a mere selection authorized by law between two jurisdictions in which to sue does not open the door for a charge authorizing prejudicial inferences therefrom in regard to the alleged cause of action.

3. The court further charged: "I charge you that carriers must treat their passengers respectfully, and protect them, so far as they reasonably can, from injury or insult on the part of their employees." "A carrier of passengers is bound also to extraordinary diligence *on behalf of himself and his agents* to protect the lives and persons of his passengers." (Italics ours.) Civil Code (1895), § 2266 (Civil Code (1910), § 2714). This duty is due from the carrier not only on behalf of himself, but on behalf of his agents to whom he entrusts its discharge. The charge quoted was erroneous.

4. A consideration of the charges of which complaint was made on the subject of the provocation by the plaintiff of the difficulty with the conductor will show that they were in some respects inaptly worded. But aside from any question of inaccuracy in expression on the part of the presiding judge, this court has said that if a passenger on a railway train, by assault upon the conductor, or by abusive language, or the like, provokes a difficulty and unfits the conductor for the performance of his duties as such, and the latter commits an assault and battery upon him, the company is not liable, although the battery may not be entirely justifiable, or may be excessive in its character. In some instances even a broader mode of expression has been employed. See *Peavy* v. *Georgia Railroad & Banking Co.*, 81 *Ga.* 485 ; *Georgia Railroad & Banking Co.* v. *Richmond*, 98 *Ga.* 495 ; *City Electric Railway Co.* v. *Shropshire*, 101 *Ga.* 33 ; *Georgia Railroad & Banking Co.* v. *Hopkins*, 108 *Ga.* 324 ; *Central of Georgia Railway Co.* v. *Motes*, 117 *Ga.* 923 ; *Dannenberg* v. *Berkner*, 118 *Ga.* 885, 889 ; *Macon Railway & Light Co.* v. *Mason*, 123 *Ga.* 773, 776. Permission was given to review the decisions in these cases, so far as necessary, on the point now under consideration. We will consider what such cases respectively decided : then whether the rulings actually made were sound and should be allowed to stand or not, so far as they seek to lay down a rule of law

to be given in charge to the jury; or whether they should be reversed or modified. In doing this we will first deal with the matter more especially with reference to the statutes and decisions of this State, and will afterward refer somewhat to the decisions of courts in other jurisdictions, and to text-books based upon adjudications.

At the outset it is well to remember that in dealing with the general question of whether a master is liable for a willful tort of his servant, the doctrine of respondeat superior furnishes the basis for decision, if there are no statutory provisions on the subject, but that, in certain instances, there is a relation between the master and the injured person, out of which arises a duty of protection; and this duty is to be considered in addition to the general doctrine mentioned above. This is true as to a carrier and its passengers. The carrier owes to its passengers a duty of protection even against outsiders. A fortiori it must protect its passengers against its own employees engaged in the performance of its contract of carriage, and for whose acts in so doing it is responsible. Under the Civil Code (1910), § 2714 (Civil Code (1895), § 2266), a carrier is bound not only for extraordinary diligence on his part or "behalf," but also on the part of his agents, for the protection of his passengers. A failure to bear this in mind has caused some confusion and lack of harmony in decisions.

Let us see what was actually decided in the cases under review, and what was the basis on which they rested. In *Peavy* v. *Georgia Railroad and Banking Company,* 81 *Ga.* 485, there was strong evidence tending to show these facts: A drunken passenger, armed with a pistol, was using profane language while standing on the platform of a car forming part of a passenger-train. The conductor approached him, and either took him by the collar or touched him on the shoulder, and admonished him not to swear. After some conversation, the plaintiff went into the car and took a seat. When the conductor came to take up tickets, the conversation was renewed, the passenger again cursing and using obscene language. He was profane and disorderly; and upon the conductor's trying to put him off the train, he drew a pistol. He had already made a threat as to what he would do if the latter sought to eject him. The conductor borrowed a pistol from a sheriff who happened to be a passenger, forced the passenger to lower his hand, backed him off the train, and then shook the pistol in his face and told him that if he got on the

train any more he would get hurt.  The passenger replied with grossly vituperative obscenity and profanity, too foul to be reproduced in the published opinion.  The conductor shot at him, hitting him in the shoulder, and about the same time the plaintiff shot at the conductor, and they exchanged five shots, the conductor hitting three times, but not being hit.  He still dared the conductor to leave the train, and when the latter went back into the car, endeavoring to get another pistol, the bell-rope was pulled and the train moved on.  Even then the ex-passenger attempted to board it again, and was last seen standing beside the track waving his pistol.  The jury found a verdict for the plaintiff for $1,500.  The presiding judge granted a new trial.  On the next trial, they found for him $2,250.  The judge granted a second new trial.  The plaintiff excepted, and assigned error on this grant.  The actual ruling made by this court was thus stated: "We think the court below was well warranted in granting a second new trial."  The judgment was affirmed, and we think rightly so.  What was said by Bleckley, Chief Justice, was in discussing the question whether, under the evidence, the presiding judge erred in not allowing the verdict to stand.  No charge of the court was involved, and what was said in the opinion must be considered in view of the question actually before the court and decided.  That distinguished jurist discussed the case in his usual terse and graphic style.  Among other things he said: "He unfitted the conductor for exercising the care and prudence that were essential to guarding the interest of the company, and essential to performing in a proper manner his duty to the company or to the plaintiff.  The plaintiff spoiled the instrument, and then sued the manager because the performer did not make good music.  It was the plaintiff's fault that the conductor was out of tune."  It was added that, according to the conductor's evidence, he was excusable; though it was also said that, even if the conductor was not altogether excusable, the plaintiff should not recover from the company.

In *Georgia Railroad and Banking Company* v. *Richmond, 98 Ga. 495,* a person purchased a railroad ticket, intending to take a train about to arrive, but failed to do so because he did not succeed in getting his baggage checked in time.  He left the premises of the railroad company and registered at a hotel, intending to take a train for his destination the next morning.  Afterward on the same day he returned to the station to make inquiries about, or arrange for the

storage or checking of, his baggage, as he claimed. It was held that at that time he was not a passenger, but nevertheless had the right to go to the station for the purpose stated. While at the station, an altercation occurred about his being left, his treatment, and the failure to check his baggage for the train which he had desired to take. He sued the company for an assault and battery committed by the agent. One of the defenses was that the plaintiff had, without sufficient provocation, used to the agent opprobrious and insulting language, accompanied with sneers and contemptuous gestures; and this court was of the opinion that there was evidence to support this defense. It was held that the court erred in giving this charge without qualification: "Sneers, looks, or contemptuous gestures will not justify an assault by an agent of a railroad company upon one who has a ticket and has become entitled under the contract to courteous treatment, until the contract was fully carried out by the railroad company or its agents." A similar charge had been upheld in *East Tennessee, Virginia & Georgia Ry. Co.* v. *Fleetwood,* 90 *Ga.* 23 (15 S. E. 778) ; but it was said that in that case the plaintiff was a passenger actually riding upon the defendant's train, and entitled to protection at the hands of the conductor, who assaulted him, and that in other respects the facts were different. In the opinion in the *Richmond* case, after declaring that for an unlawful battery by the agent, upon one lawfully at the station to see about his baggage, the company would be responsible in damages, it was added: "It may, in this connection, be proper to add, however, that even if Richmond [the plaintiff] went to the station for the lawful purpose of attending to the business above mentioned, it was nevertheless incumbent upon him to treat the agent with the same respect due him by the agent. Therefore if, instead of so doing, he without provocation used insulting or opprobrious language to the agent, which naturally enough resulted in a difficulty, the company should not be held responsible. In other words, if Richmond, by his own improper behavior, unfitted the agent for exercising the care and prudence which were essential to his performing in a proper manner his duty to the company and to the plaintiff, the latter should not complain." The *Peavy* case was cited as authority. The actual ruling made was that the plaintiff was not a passenger, and that a charge applicable to passengers did not apply to him. The quotation above shows on its face that it was an obiter dictum, and was

something which the writer of the opinion merely thought it might be proper to add in connection with the ruling made. In the *Peavy* case there was an actual assault and an endeavor to shoot the conductor, accompanied by threats and the foulest obscenity and profanity. In the *Richmond* case the evidence for the defendant tended to show harsh words, some rudeness of manner, and a declaration that the statement of the railroad agent that the plaintiff himself was at fault was untrue and the agent knew it. The altercation arose from a complaint on the part of the plaintiff that the agent had been negligent in the discharge of his duty, and had thereby caused him to get left. He used no profanity or obscenity, and committed no assault. It can hardly be thought that this court ever intended to lay down as a rule of law to be given in charge to juries, that if a person seeking to take passage on a train gets left by reason of his baggage not being checked, and complains, even somewhat harshly, that the agent is at fault, he may be knocked down and beaten, without responsibility on the part of the railroad company, if the act of the servant of the company is not justified. No such rule was established by the obvious obiter in that case.

In *City Electric Railway Co.* v. *Shropshire,* 101 *Ga.* 33, there was evidence tending to show these facts: The plaintiff was not a passenger, but stopped an electric car and entered it in order to look for a bundle which he said belonged to his sister. He delayed the car, refused to get off, after it started caused it to stop again, and again refused to leave it, when the conductor informed him that the car was behind time and that he could not "fool away" time with him. He replied by cursing the conductor and inviting the latter to put him off. When the conductor took hold of his arm, he struck the conductor in the breast and started to jump off, and while in the act of doing so, the conductor kicked him. As the car moved off he was hunting for rocks. The judge charged the jury, that "if the plaintiff brought about a difficulty, and a difficulty was had, and he brought it about by his own fault, and the defendant went too far and did more than it was authorized to do in ejecting him, in considering what amount of damage you would give, you would be authorized to diminish the amount of the damages proportionate to the fault of the plaintiff in bringing about the result that came upon him." It was held that this instruction cut the jury off from considering the evidence above mentioned for any other purpose

save that of determining to what extent they should reduce the plaintiff's recovery, in the event they believed the conductor was not wholly justified in using the degree of force to which he resorted. In the headnote it was said that if, under circumstances like those recited, the conductor used unnecessary violence in the expulsion, the company would not be liable in damages for personal injuries thus inflicted, provided the assault made upon its servant was of such a nature as to excite his passions, and render him unfit to perform duties devolving upon him. The reason for this ruling given in the headnote was as follows: "This is so because the person injured, by his own grossly improper conduct, is to be regarded as having forfeited his right to immunity from unnecessary violence, by inviting the conductor to disregard and abandon his official duties and enter into a personal encounter on his own account and upon his individual responsibility." Here there was an actual assault upon the conductor. But in the opinion broad language was used as to an act brought about "by his own grossly improper conduct." It was sought to suggest an analogy between the duty of a railroad company to use due care in the selection of machinery and appliances, and a duty to use similar care in the selection of its employees. This is an analogy that plainly does not exist, as between carrier and passenger. It is a confusion of the duty of a carrier to its passenger with that of the duty of a master to his servant, in which there is such an analogy. The master is not generally liable to one servant for the tort of a fellow servant, if he has used due care in the selection of the fellow servant. The statutory provision as to railroad employees, and the change made as to them by the act of August 16, 1909 (Civil Code (1910), §§ 2782-2787), need not be mentioned here. But a carrier is liable for the tort of its servant upon its passenger, and it is no reply to say that it used ordinary care, or even extraordinary care, in selecting its servants. To hold that for a tort committed upon a passenger by a servant of the carrier, in the discharge of the business entrusted to him, the carrier could free itself from liability by showing that it used care in selecting the servant, would be to subvert all rules on that subject as heretofore laid down.

In *Georgia Railroad & Banking Co.* v. *Hopkins,* 108 *Ga.* 324, in an action for an assault and battery by a night watchman of the company in charge of its station, the defense was that the plaintiff

went to the station on a cold night, long before the arrival of the train, and when the station was not open, and asked the night watchman to be allowed to enter it and wait; that this was permitted, and the plaintiff and the persons with him were cautioned not to go among the cars standing near by, or the cotton, on account of danger of fire from cigars and cigarettes; that, later in the night, the watchman had his attention directed to some one in a vacant car, and, on going to it, found the plaintiff and a woman, and another man and another woman, all engaged in acts of immorality; that the plaintiff took great offense at being required to come out, and cursed and abused the night watchman, continuing this after returning to the waiting-room; that the watchman caught him by the coat sleeve and pulled him from the seat where he was, and he then assaulted the watchman, and continued his insulting language; whereupon the watchman struck him. On the request of the defendant, the court charged: "If you believe that the plaintiff was guilty of immoral conduct in his acts in the depot of the defendant, and that as a result of the discovery of such conduct words followed between the plaintiff and the watchman, and that the plaintiff used insulting and opprobrious language to the watchman which naturally enough resulted in a difficulty, the company should not be held responsible for alleged assault by the watchman;" and added: "That I give you in charge in this connection, or with this added to it: that the assault by the watchman must not be disproportioned to the insult offered; it being still left a question of fact for you to determine whether the battery was disproportioned to the insult." On the authority of the *Shropshire* case it was held error to add this qualification to the requested charge.

In *Central of Georgia Ry. Co.* v. *Motes,* 117 *Ga.* 923, a person who had been left by a railway train insisted on lying down and sleeping on the benches in the waiting-room, and, in spite of warnings from the company's servant in charge of the room that this was against the rule and could not be permitted, persisted in his conduct. Finally the official caught hold of him by the coat and pulled him from the position in which he was. The plaintiff contended that he was pulled out of his seat, and a button was broken off his coat, and that a threat was made to have him locked up. According to the evidence for the defendant, the company's servant caught hold of the plaintiff merely to pull him into a sitting position. It

was said that "A passenger who displays persistent determination to disregard such a regulation, and by his wrongful conduct so exasperates a servant of the company as to unfit him for properly performing the duty he owes his master with respect to his treatment of its patrons, can not justly complain that the company's servant lost his temper and resorted to unnecessary force in compelling an observance of the regulation on the part of the passenger." The decision was by five Justices, and was based on those already cited. This case seems to carry the doctrine of those preceding a step further. If the decision meant that, in an action for an assault or the use of unnecessary violence in the discharge of the duty of ejecting a person from a train or a station, the company is relieved from liability if the plaintiff is somewhat aggravating, and merely failed to promptly regard the rules of the company, it made a long advance.

In *Dannenberg* v. *Berkner,* 118 *Ga.* 885, 889, it was merely said: "Nor was he [the court] bound to charge the principle laid down in *Peavy* v. *Ga. R. Co.,* 81 *Ga.* 485, the same not having been requested in writing," which does not seem to accord with statements in other cases supra, if the facts authorized the charge.

In *Macon Railway and Light Company* v. *Mason,* 123 *Ga.* 773, the question was whether a charge on the subject of punitive damages was authorized. A conductor of an electric car, in putting on the brake, struck a passenger who was standing on the platform of a "trailer." It was stated in the opinion that there was no dispute that this was unintentional, but there was a difference as to whether it was negligently done. The plaintiff demanded of the conductor what he meant by treating a gentleman that way; and the conductor responded that the passenger had no business standing there. The ruling was that this presented no case for a charge on the subject of punitive damages. In the course of the opinion it was said: "A conductor has been judicially recognized as human. . . And this court is committed to the doctrine that if a passenger is himself responsible for exciting the anger of an agent or employee of a railway company, whereby he is for the time being unfitted for performing the exacting duties he owes to his employer with respect to his treatment of passengers, the company can not be held accountable for improper conduct on the part of its servant." This was

obiter dictum. There was no case of intentional assault, but a mere question of negligence.

These are the cases under review. It will be perceived that from certain expressions used in the *Peavy* case, carried by other cases into the domain of substantive propositions of law suitable to be given in charge, and aided by obiter dicta, has grown the present theory that if a passenger excites the anger of the servant of a railroad company even of a conductor to whom is entrusted the company's duty of protecting him, whereby the conductor is for the time being unfitted for the performance of his duties, though the conductor unjustifiably assaults him, the company can not be held liable.

Of course, if the conduct of the servant of the railroad was justifiable, neither the servant nor the master would be liable. But a rule which would free the carrier from liability, although holding its servant to whom it entrusted the performance of its contract of carriage not justifiable, presents, we think, an untenable doctrine. What shall be the legal test of the sufficiency of conduct on the part of the passenger to put a conductor "out of tune," or disqualify him by reason of anger from performing his duty, but not justify his action? Shall it be based on some theoretical average conductor; and if so, shall we look to the average sensitiveness of conductors throughout the country, or only on a particular road? Or shall the question be determinable by the sensitive disposition and inflammable temperament of the particular conductor whose act is under consideration, and his condition at the time of the occurrence? Is it meant that a passenger must be entirely free from fault in order to hold a carrier liable for an assault and battery committed by its conductor? Or that imperfection of temper on the part of the conductor, if annoyed or aggravated by a passenger, will free the carrier from responsibility; and that the passenger alone is held to a rule of perfection in conduct, manner, and speech?

Let us now consider the statutes of this State and some of the decisions rendered before and after those above mentioned. By the Civil Code (1895), § 3817 (Civil Code (1910), § 4413), it is declared that "Every person shall be liable for torts committed by his . . servant by his command, or in the prosecution and within the scope of his business, whether the same be by negligence or volun-

tary." By section 2321 (Civil Code (1910), § 2780) it is declared that "A railroad company shall be liable . . for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." Section 1861 (Civil Code (1910), § 1910) declares that "Every corporation acts through its officers, and is responsible for the acts of such officers in the sphere of their appropriate duties." Section 902 of the Penal Code of 1895 (Penal Code (1910), § 925) codified from the act of 1881, declares that "The conductors of a train carrying passengers are invested with all the powers, duties, and responsibilities of police officers while on duty on their trains: Provided, nothing herein contained shall affect the liability of any railroad company for the acts of its employees. When a passenger is guilty of disorderly conduct, or uses any obscene, profane, or vulgar language, or plays any game of cards or other game of chance for money or other thing of value, upon any passenger-train, the conductor of the train may stop it at the place where such offense is committed, or at the next stopping-place of the train, and eject the passenger from the train, using only such force as may be necessary to accomplish the removal; and the conductor may command the assistance of the employees of the company and of the passengers on the train to assist in the removal," etc. These statutes were in force when the decisions under review were made. We fail to see in them any intimation that if a conductor is put "out of tune," or made angry by the conduct of a passenger, and commits an unlawful assault and battery upon him, or unjustifiably uses excessive force and violence upon him, the company shall not be liable. On the contrary, the statute last quoted contemplates that the passenger may be ejected if he is guilty of disorderly conduct, or uses obscene, profane, or vulgar language, or gambles on the train; but it distinctly declares that the conductor shall use "only such force as may be necessary to accomplish the removal," and also that nothing in the statute shall affect the liability of the company for the acts of its employees.

In *Gasway* v. *Atlanta and West Point R. Co.*, 58 *Ga.* 216 (decided before the *Peavy* case in 81 *Ga.*), it was ruled that "Railroad companies are responsible to passengers for the torts of the conductors and other servants of the company employed in running

trains, when such torts are committed in connection with the business entrusted to such servants and spring from or grow immediately out of such business." The plaintiff, a negro, sought to obtain a check for the baggage of his wife, who had taken her seat in the car. The baggage-master refused it, unless the plaintiff would produce his passenger, saying that this was not allowed by the rules of the company. As the plaintiff turned off he said it was "a damned bad rule," if it was a rule. The baggage-master testified that the plaintiff called him a damned fool. He jumped out of the car, followed the plaintiff alongside the train, and beat him. The conductor came up and took hold of the plaintiff's arm. It was held that for such a tort the railroad company was liable, and that a charge in regard to punitive damages should have been given on request. The court did not intimate at that time that the railroad would be freed from liability, if the baggage-master was put "out of tune" by the language of the colored person with whom he was dealing, but not justified in the battery.

In *Western & Atlantic R. Co.* v. *Turner,* 72 *Ga.* 292 (53 Am. R. 842), where a person entered a cab of a freight-train and sought to take passage, which was refused, and a battery was committed by the conductor, it was held that it was the conductor's duty to refuse the passage in a polite manner and give the plaintiff a reasonable opportunity to quit the cab, and, if he still refused to leave it, then to use such reasonable force as was necessary to eject him therefrom. It was said: "Whatever the conductor did in relation to either of these matters was, under the facts of this case, clearly done in the prosecution and within the scope of his business, and the company was liable for his conduct, even though it was voluntary." It was also held that the section of the code (Civil Code (1910), § 3603), which states that "the principal is not liable for the willful trespass of his agent, unless done by his command or assented to by him," must be construed in harmony with the section (Civil Code (1910), § 4413) which makes every person liable for torts committed by his servant, by his command, or in the prosecution and within the scope of his business, so as to allow both to remain of force in the cases to which they apply.

In *Christian* v. *Columbus & Rome Ry. Co.,* 79 *Ga.* 460 (7 S. E. 216), a widow brought suit for the homicide of her husband, alleging that, while in the office of the defendant's agent for the trans-

action of business pertaining to the agency, her husband was killed by the agent. In ruling in regard to a demurrer, it was said that "if the agent killed this lady's husband wrongfully, the company is liable for it, under the facts alleged in this declaration." There was also a count in the declaration which alleged that the agent was subject to mental aberration, and that the company employed him' with knowledge of the fact. In regard to this it was said: "We think also that if the homicide was the result of insanity, and the. railroad company was faultless in regard to employing the agent, anything that would excuse the agent criminally for the act would excuse the railroad company civilly." The opinion was written by the same Justice who prepared that in the *Peavy* case. The same case was again before this court in 97 *Ga.* 56 (25 S. E. 411), with the parties reversed in its statement. It was said (p. 58): "Of course, in such a case, if an employee, charged with the duty of executing upon the part of the master the contract of passenger carriage, should wrongfully inflict injuries upon the person of the passenger, the carrier would be liable." Again it was said (p. 60): "If the patron were himself guilty of such disorderly conduct as would authorize his expulsion from the premises, the agent of the company might be authorized to expel him, using only such force as would be necessary to accomplish that purpose, but such conduct or provocation would not justify the homicide of the patron upon the part of the agent, and the company could not exonerate itself from liability for the consequences of the act of the agent done on its behalf, without showing that the agent was justified in the premises. Of course, if the homicide committed by the agent was justifiable, the justifiable act of the agent could not be made by relation the wrongful act of the company." And again: "If the homicide be wrongful and committed in the course of the transaction of the business of the company, it can make no difference whether the offense committed by the agent be classed as manslaughter or murder, the company would nevertheless be liable; but if the agent was justified in its commission, no liability could arise against the company, whether the act was committed by him while engaged in the business of the company in the line of his duty, or otherwise." Here it was distinctly ruled that justification of the act of the agent was the test of whether the company would be freed from liability, not mere annoyance of the agent or putting him "out of tune." It was

said that it mattered not whether the homicide was murder or man-slaughter as to relieving the company from liability. But a killing is not reduced from murder to manslaughter except by reason of an assault, or equivalent circumstances, justifying violent passion, but not amounting to justification of the act done. It can not be that if the servant of the company commits an unlawful battery, though aggravated or provoked by language or conduct of the pas-senger, the company is relieved from liability, but if the passenger dies from the effects of the battery the company is liable. This would be to make the liability of the company for the same conduct of its servant depend rather upon the vigor or weakness of the pas-senger's constitution than upon the certainty of the law of the State.

In *Thompson* v. *Wright,* 109 *Ga.* 466, 469 (34 S. E. 560), the following was quoted approvingly from Cooley on Torts: "The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business, or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by circumstances and the occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another." In *Central of Georgia Ry. Co.* v. *Brown,* 113 *Ga.* 414 (38 S. E. 989, 84 A. S. R. 250), it was held that "A master is liable for the willful torts of his servant, com-mitted in the course of the servant's employment, just as though the master had himself committed them. This rule applies as well where the master is a corporation as where he is a private indi-vidual." In the opinion Chief Justice Simmons said: "The theory that one may be a servant one minute, and, the very next minute, get angry, commit an assault, and in that act be not a servant, was too refined a distinction." It was also held that a master and servant might be jointly sued in trespass for a willful tort com-mitted by the servant within the scope of his employment. Now suppose that, in the cases under review, the master and servant had been jointly sued in trespass for a battery committed by the servant, how could it be said, consistently with the decision last quoted, that the jury should find that there was an unlawful battery, or a use of such excessive force as amounted to a battery, that this was a tort of the agent for which he was liable, but that the master

was freed from liability because the injured person was guilty of conduct calculated to anger the servant but not to justify him? Would there be a verdict for the plaintiff against the servant, but in favor of the master? At what point in the anger of the servant does his agency and the liability of the master cease? Or at what point, short of justification, does the liability of the agent continue and that of the master terminate? The relation of master and servant does not cease because the servant is mad, though aggravated. See also *Savannah Street etc. R. Co.* v. *Bryan,* 86 *Ga.* 312 (12 S. E. 307, 22 A. S. R. 464) ; *East Tenn., Va. & Ga. Ry. Co.* v. *Fleetwood,* 90 *Ga.* 23, supra; *Southern Railway Co.* v. *James,* 118 *Ga.* 340 (45 S. E. 303, 63 L. R. A. 257) ; *Savannah Electric Co.* v. *Wheeler,* 128 *Ga.* 550 (58 S. E. 38, 10 L. R. A. (N. S.) 1176).

In some jurisdictions opprobrious words will not justify a battery. In this State, on the trial of an indictment for an assault, or an assault and battery, the defendant may give in evidence to the jury any opprobrious words, or abusive language, used by the prosecutor, or person assaulted or beaten, "and such words and language may or may not amount to a justification, according to the nature and extent of the battery, all of which will be determined by the jury." If the jury find that the opprobrious words of the passenger, or act by him amounting to an assault, would justify the servant, his conduct, so justified, would not furnish a ground for recovery against the master. But the rule works both ways. If the servant represents the master in his act, and the master is responsible for his tort, aggravation of the servant which will not justify him will not free the master from liability. Acts which may not amount to a justification may yet amount to a mitigation, and, if the mitigating circumstances be strong, or the injury small, may furnish a basis only for recovery of nominal damages. Civil Code (1895), §§ 3905, 3892, Civil Code (1910), §§ 4502, 4489. It would seem that provocation given by a passenger at a different time could not be considered. *East Tenn., Va. & Ga. Ry. Co.* v. *Fleetwood,* 90 *Ga.* 23 (3), supra. In some jurisdictions it is held that words of provocation, not justifying, can only be considered to mitigate punitive damages. But in this State, where words may excuse entirely, they should be allowed to excuse in part, that is mitigate. *Thompson* v. *Shelverton,* 131 *Ga.* 714 (63 S. E. 220).

The test of whether the employee was justified was recognized

as the correct one in New Orleans etc. R. Co. *v.* Jopes, 142 U. S. 18 (12 Sup. Ct. 109, 35 L. ed. 919), where it was held that "If an act of an employee be lawful and one which he is justified in doing, and which casts no personal responsibility upon him, no responsibility attaches to the employer therefor."

It will appear from what has been said that the decisions reviewed on the subject now under consideration are in conflict with earlier as well as later decisions of this court, and are not in harmony with the statute law or sound legal reason. They are therefore modified so as to accord with the rule herein enunciated.

We are aware that in Harrison *v.* Fink, 42 Fed. 787, the United States circuit court upheld the direction of a verdict for a defendant railway company, and quoted at some length from the *Peavy* case. This, however, had reference to the facts of the particular case, and whether they would authorize a finding for the plaintiff.

This opinion has already reached a length which precludes a full discussion of the views of text-writers and of courts in other jurisdictions. It is sufficient to say that they are not in perfect harmony. Among the cases which hold that abusive language, not justifying an assault by the conductor, will not free the company from liability, are Birmingham Ry. etc. Co. *v.* Mullen, 138 Ala. 614; Birmingham Ry. etc. Co. *v.* Baird, 130 Ala. 350 (30 So. 456, 54 L. R. A. 752, 89 Am. St. R. 43) ; Weber *v.* Brooklyn etc. R. Co., 62 N. Y. Supp. 1; Hanson *v.* European etc. R. Co., 62 Me. 84 (16 Am. R. 404) ; Hanan *v.* Omaha R. Co., 35 Neb. 74; Chicago etc. R. Co. *v.* Flexman, 103 Ill. 456 (42 Am. R. 33) ; Baltimore etc. R. Co. *v.* Barger, 80 Md. 23 (26 L. R. A. 220, 45 Am. St. R. 319) ; St. Louis Southwestern Ry. Co. *v.* Jones, 64 Ark. 613 (39 .L. R. A. 785). In the States where it has been held that abusive language, though not justifying the conductor, will relieve the company, it will usually be found that the theory prevails that a willful tort by a conductor is, ipso facto, outside the scope of his employment—a doctrine which has been distinctly repudiated by this court in cases heretofore cited. The only case outside of Georgia, cited by counsel to sustain this doctrine, was that of Scott *v.* Central Park etc. R. Co., 53 Hun (N. Y.), 414, where it was said: "That while it might be true that the use of abusive language to the driver [of a street-car] did not justify the assault, so far as the driver was concerned, in the eyes of the criminal law, there was no reason for holding

that where a passenger, by his own improper and insulting behavior, while a passenger on the road of the railway company, brought upon himself an assault, that the carrier should be held responsible;" and it was immediately added, "that it was clear that the act of the driver was not in the course of his employment." This view has not been followed in New York in later cases; but it has been held that provocation might be considered in mitigation of damages. Freedman v. Metropolitan Street Ry. Co., 85 N. Y. 986; Weber v. Brooklyn etc. R. Co., 62 N. Y. Supp. 1, supra; Stewart v. Brooklyn and Crosstown R. Co., 90 N. Y. 588 (43 Am. R. 185). The injury for which the present suit was brought occurred in Alabama. Rulings of the Supreme Court of that State on the subject now under consideration have been cited above.

In 4 Elliott on Railroads, § 1638, it is said: "A carrier is bound to discharge the implied duty, arising out of its contract and imposed by law, that its passengers shall be protected from injury by its servants and shall not be willfully insulted and harmed by them; and if it commits the discharge of this duty to an employee, it may well be held to do so at its peril, notwithstanding the exercise of care on its part in selecting its servants. Either the company or the passenger must take the risk of infirmities of temper, maliciousness, and the misconduct of the employees whom the company has placed upon the train and to whom it has committed the discharge of its duty to protect and look after the safety of passengers."

It is not to be understood that this court approves of such conduct as the evidence for the defendant tended to show that the plaintiff was guilty of, but which he in part denied, though he admitted drinking about six glasses of beer shortly before entering the train, and going out and standing on the step of the car, where he had no business to be. Without passing on the facts of the present case, we may say generally that we would lend no countenance to drunken rowdies going upon railroad trains, using foul and profane language, sometimes in the presence of women and children, seeking to terrorize or pick quarrels with the passengers or railroad employees, and then, when they bring trouble upon themselves, or are ejected from the train, asking juries to award them large damages against the company as salve for their besotted but wounded feelings. In this State conductors in charge of trains are clothed with police powers, and on proper occasions must use them, though

they must not abuse them. *Hillman* v. *Georgia R. &c. Co.*, 126 *Ga.* 814 (56 S. E. 68). Honest juries should not make profitable such disorderly conduct on the part of passengers as that hypothetically mentioned. To do so would be a violation of their duty. If in any case of that character a jury should render a verdict which does not accord with justice and the weight of the evidence, the trial judge should grant a new trial. It would be his duty to do so. In *Peavy's* case (81 *Ga.*, supra) the second grant of a new trial was sustained. But this is different from laying down an erroneous rule of law to be given in charge to the jury, lest perhaps juries may be biased, or judges may fail to fully discharge their duty.

*Judgment reversed. All the Justices concur.*