## 5363.   ATLANTIC COAST LINE RAILROAD CO.
### *v.* THOMAS.

1. The petition alleges that the plaintiff boarded the defendant's passenger-train at Uptonville, and paid to the conductor of the train the fare demanded for his passage to Offerman, a station on its railroad, and that afterwards, at an intermediate point, the same conductor demanded a ticket from him, and disputed his reply that he had paid his fare in cash, called him a "hobo," accused him of trying to "beat" his way, used "considerable language" in repeating these charges, and ejected him from the train; that several passengers were within hearing of the conductor's language; that "the said treatment, by word and gesture,

was outrageous in the extreme, and deeply mortified petitioner's feelings
and pride," and that "through said treatment he has been damaged in
the sum of $2,000," for which he sues. *Held*, that the petition is not
demurrable because of the absence of an allegation that the plaintiff was
given a receipt for the amount paid by him to the conductor, or because
the petition does not give the language referred to in the allegation that
the conductor used "considerable language" in repeating the charges
made against the plaintiff, or because the petition does not allege why or
in what manner the "treatment, by word and gesture, was outrageous"
or offensive, or because the allegation that the treatment was "out-
rageous" states a conclusion without setting out the facts on which it is
based, or because the plaintiff alleges no facts to show how he was dam-
aged in the sum of $2,000 or in any other amount.

2. There being testimony to the effect that the plaintiff paid to the con-
ductor the fare demanded for the passage of both himself and another
person to Offerman, and so stated to the conductor in response to a
subsequent demand for his fare, and that the conductor at first ac-
quiesced in this statement, though afterwards disputing it, the court did
not err in allowing a witness to testify that the other person referred
to above was asked by the conductor for his fare, and answered that
his fare to Offerman was paid by the plaintiff. This was admissible as
part of the res gestæ, and as a circumstance corroborative of the plain-
tiff's contention that he had paid his fare to Offerman, and, in connection
with other evidence, was relevant as bearing on the issue as to the good
faith of the conductor in ejecting the plaintiff.

3. The instruction to the jury that a railroad company is liable for any
damage done to a person by the running of its cars or by its employees
in its service, "unless the railroad company shall make it appear that
[its] agents have exercised all ordinary care and diligence, the pre-
sumption in all cases being against the railroad company," was not sub-
ject to the objection that it was inapplicable to the case, or that it
amounted to an instruction that when the plaintiff had shown that he
was ejected from the train, a presumption would arise that the de-
fendant was liable for resulting damage, and relieved the plaintiff of the
burden of showing that he was rightfully on the train, and placed upon
the defendant the burden of showing that he was not rightfully on it.

4. The court did not err in giving in charge to the jury that part of
section 4397 of the Civil Code which relates to nominal damages. It
was error to read to the jury the remaining part of the same section,
which relates to tender to the plaintiff, there being no evidence as to
such a tender; but the error was harmless.

5. It was not proper for the court to instruct the jury that "in addition
to the general damages  .  .  , the plaintiff claims that because of the
circumstances out of which the damages accrued, he is entitled to what
is known as punitive damages;" but since the verdict can only be ad-
judged to be a finding of punitive damages (there being no attempt to
show actual damages), this instruction is not ground for a new trial.

6. The charge of the court, in its statement of contentions of the parties,
was not subject to the objection that it expressed or intimated an
opinion that the conductor lost his temper and used unnecessary force,
or that the plaintiff was a passenger at the time of his ejection from the

train. The court should not have told the jury that if the plaintiff's conduct so exasperated the conductor as to unfit him for the proper performance of his duty to the railroad company, the plaintiff could not justly complain that the conductor lost his temper and resorted to unnecessary force; but the instruction was favorable to the defendant, and a party will not be heard to complain of an instruction which was to his advantage.

7. It is not ground for reversal that the court refused to charge the jury that "the defendant company is entitled to the same fair and just treatment at your hands as though it was a private individual and neighbor of yours engaged in the same business;" or that the jury were not authorized to disregard arbitrarily the evidence of the employees of the defendant; or that in determining the amount of the verdict, they "should not increase it one penny because of the fact that the defendant is a railroad company."

8. The verdict was authorized by evidence.

DECIDED JUNE 22, 1914.

Action for damages; from city court of Blackshear—Judge Mitchell. October 30, 1913.

*Bennet, Twitty & Reese, Memory & Summerall,* for plaintiff in error.

*Andrew B. Estes,* contra.

RUSSELL, C. J. Thomas brought an action for $2,000 damages, on account of his ejection from a passenger-coach of the railroad company. The petition alleged, in substance, that the plaintiff boarded the defendant's passenger-train at Uptonville, a station on its railroad, and paid to the conductor of the train the fare demanded by the conductor for his passage to Offerman, another station, and that afterwards, at an intermediate point, the same conductor demanded a ticket from him, and disputed his reply that he had paid his fare in cash, called him a "hobo," accused him of trying to "beat" his way, and used "considerable language in repeating said charge of plaintiff being a hobo and attempting to dishonestly ride on said train; that as the said train stopped at Blackshear, said conductor put his hand on petitioner's arm and said, 'Come, follow me off this train, or pay your fare as you ought to do,' saying 'You get off now or I will have the marshal put you off,' driving him off of said train; that several passengers were within hearing of the language of the conductor; that the said treatment, by word and gesture, was outrageous in the extreme, and deeply mortified petitioner's feelings and pride," and that "through said treatment he has been damaged in the sum of

$2,000." The first trial of the case resulted in a verdict in favor of the plaintiff, for $500, but the trial court, upon a motion for a new trial, set this verdict aside. On the trial now under review the jury returned a verdict in favor of the plaintiff, for $350. The defendant excepted to the refusal of a new trial, and also assigned error on the overruling of a special demurrer, as to which exceptions pendente lite had been filed.

We do not think the court erred in overruling the special demurrer to the petition. The grounds of the demurrer were as follows: "(1) Because plaintiff does not allege whether or not he was given a receipt for the amount paid by him to conductor Acree on the occasion referred to. (2) Because plaintiff, if he was given a receipt for the amount paid by him to conductor Acree, does not attach a copy thereof to his petition, or set out in substance the contents of such receipt. (3) Because plaintiff does not specify in the 4th paragraph the words used or the substance of the words used, where it is alleged that the conductor used 'considerable language in repeating said charge of plaintiff being a hobo.' (4) Because plaintiff does not specify or allege why or in what manner the 'treatment by word and gesture' was outrageous or in any way offensive or reflecting on the plaintiff. (5) Because the allegation in the 4th paragraph, that the treatment by word and gesture was outrageous in the extreme toward plaintiff, states his conclusion without setting out the facts on which it is based, and should be stricken. (6) Because plaintiff alleges no facts to demonstrate how he was damaged in the sum of two thousand dollars, or in any other amount."

1. The first and second grounds of this demurrer may be considered together. They raise the point as to what duty, if any, devolved upon a passenger who was given a receipt-slip for cash fare which he paid to the conductor or collector of the carrier. In our opinion the conductor's giving a receipt to the passenger imposes no duty whatever on the passenger to see that the receipt is correct, or to preserve the receipt. Nor does the acceptance of an incorrect receipt, without more, necessarily estop the passenger from asserting that he paid a different or larger amount. The receipt may be useful in calling the attention of the conductor to an error, if an error has been made, with a view to the correction of the error; but, by the express provisions of our code, a receipt is,

.after all, "only prima facie evidence of payment, and may be ·denied or explained by parol" (Civil Code, § 5795) ; and since the rule of some carriers which requires conductors to give receipts may well be considered as a regulation made for the purpose of insuring proper returns of cash fares collected to the carrier (with which purpose ordinarily the passenger has no concern), we do not think that either the carrier or the passenger would be estopped to. deny the correctness or the validity of a receipt given for a cash fare. It was, therefore, entirely unnecessary for the plaintiff in the present case to allege whether he was given a receipt, or to attach a substantial copy of the receipt to his petition; and the court correctly overruled the first two grounds of the demurrer.

The allegation that the conductor used "considerable language in repeating said charge of plaintiff being a hobo" (construing it in accordance with the rule that pleadings are to be construed most strongly against the pleader) meant nothing more than that the conductor's charge that the plaintiff was a "hobo" was several times repeated; and since the language used did not suggest any inference that any term of opprobrium other than that of being a "hobo" was used, the amendment suggested by the demurrer could not have been of particular benefit. Mere conclusions of the pleader should of course be stricken, but it is permissible to characterize the nature and effect of any given set of facts, after the facts are themselves fully stated; and for this reason we think that the plaintiff was justified in characterizing the treatment which he alleged he had received as "outrageous in the extreme" and "deeply mortifying to his feelings;" and that the court did not err in overruling the 4th and 5th grounds of the special demurrer.

The 6th special ground of the demurrer, in which complaint is made that "the plaintiff alleges no facts to demonstrate how he was damaged in the sum of $2,000, or in any other amount," is clearly without merit, because, under the allegations of the petition, the amount recoverable, if the plaintiff was entitled to recover anything, was to be determined, not by the court, but by the jury, in the impartial exercise of their enlightened conscience; and in a case of this kind the amount thus laid as damages is not material except as fixing a limit to the amount claimed, beyond which the plaintiff can not recover.

2. The defendant complains that a witness, who testified that he was present at the time the conductor demanded fare to Offerman from Mr. Thrift, was permitted, over objection, to state Mr. Thrift's answer. This testimony was as follows: "I was on that train. Conductor Acree asked Mr. Thrift for his fare, and Mr. Thrift answered and said 'My fare has been paid by Mr. Thomas to Offerman.'" The objection urged to the admission of this testimony was that it was irrelevant and immaterial, and prejudicial to the defendant, and furthermore, that it was mere hearsay. It must be admitted that Thrift's statement to the conductor was hearsay, and yet we are of the opinion that it was admissible as part of the res gestæ, and as a circumstance corroborative of the plaintiff's contention that he had paid his fare not merely to Waycross but to Offerman, which was several miles beyond Waycross. It must be borne in mind that when this testimony was admitted, the plaintiff and Thrift had already testified. The question whether the plaintiff had in fact paid his fare beyond Waycross and to Offerman was raised almost immediately after the train passed on its way from Waycross. One of the vital issues in the case was as to the good faith of the conductor in ejecting the plaintiff, or the absence of good faith. The plaintiff and Thrift testified that when they first stated to the conductor, in response to a demand made by him shortly after leaving Waycross, that their fares to Offerman had been paid, the conductor apparently acquiesced, for he passed on and collected the fares from other passengers, not returning to Thomas or Thrift or further insisting upon collecting from them, until the train had passed Blackshear. The statement may well be considered a part of the res gestæ; and it was a statement of such a nature as would seem to have called for expostulation or denial on the part of the conductor. If the conductor was absolutely certain at that time that the receipts given by him were not correct, and knew then (as he testified he did know) that Thrift's fare had not been paid further than to Waycross, he must have known also that Thomas's fare had not been paid any further; for it is not disputed that Thomas paid Thrift's fare as well as his own, and that the two receipts were identical in amount. In the state of the record, Thomas's payment of his fare and his payment of Thrift's fare are, in this particular, necessarily inseparable. And thus it happens that the statement of Thrift that his fare had been

paid which does not appear to have been contradicted at that time by the conductor, may well be considered to be as fully competent as if the transaction had related to the payment of Thomas's fare alone. As Thomas had paid Thrift's fare (whether the amount was adequate or too small to entitle the passenger to carriage to Offerman), the res gestæ of Thomas's payment properly included any statement to the conductor in regard to that payment that might be adjudged free from suspicion of device or afterthought; and if the court was in doubt as to whether the statement was suggested by device or afterthought, it was not improper to submit the evidence to the jury.

3. The plaintiff in error insists that the court erred in charging the jury that a railroad company is liable for any damage done to a person by the running of its cars or by its employees in its service, "unless the railroad company shall make it appear that their agents have exercised all ordinary care and diligence, the presumption in all cases being against the railroad company." It is insisted that this charge was not applicable to the issue; that there was no evidence to authorize it; and that no presumption would arise against the defendant unless the jury were satisfied, by the evidence, that the plaintiff had (as was claimed by him) paid his fare from Uptonville to Offerman, and had a legal right to be on the defendant's train at the time he was ejected. It is true that the issue as to whether the plaintiff, at the time he was ejected, had the right to be on the defendant's train as a passenger was one of the issues raised by the pleadings; but it was undisputed that he had paid his fare to Waycross; and if he reached the conclusion that he would continue his journey to Offerman, even after he reached Waycross, we see no reason why, as an intending passenger, he would not be entitled to retain his seat in the passenger-coach, secure in the consciousness of possessing immunity from personal insult at the hands of the defendant's employees. The question whether he had in fact paid his fare to Offerman is subsidiary to this principle. It is not insisted that if the plaintiff had already paid his fare to Offerman, the defendant company did not owe him the duty of exercising all ordinary care and diligence to the end that the passenger be treated with proper decorum; and it can not be seriously contended that one who has properly entered a car as a passenger, even without paying his fare, may legally be subjected to insult by a

conductor in requesting him to pay his fare. We do not think the instruction is subject to the criticism that the jury were thereby instructed that when the plaintiff had shown that he was ejected, without more, a presumption would arise that the defendant company was liable for the damages which might result. It is, of course, well settled that in cases of ejection there is no presumption against the railroad company until the plaintiff has shown that he was rightfully on the defendant's train at the time he was ejected. In the present case there was evidence that the plaintiff was rightfully on the train. If the truth of the conductor's contention that the plaintiff had only paid his fare as far as Waycross be conceded, the evidence still shows that he was a passenger intending to go to Offerman; and though, in this view of the case, the conductor had the right to demand fare from Waycross to Offerman, and to eject the passenger upon his refusal to pay, he did not have the right to humiliate the passenger in making the demand. The plain meaning of the language employed by the judge was that when it is shown that a passenger rightfully upon a train was ejected, the presumption is that the ejection was wrongful. The passenger can not claim damages for ejection until he has shown that he was rightfully upon the train; but having shown that he was rightfully upon the train, and that he was ejected, the presumption of law requires the carrier to justify his ejection. This principle was well stated by the court in instructing the jury that "the law also requires not only extraordinary care and diligence in conveying passengers to their destination, but also kind and decorous treatment of the passengers by employees of the carrier while the relationship of carrier and passenger continues, and any violation of this rule, by which a passenger is humiliated or wounded in his feelings, is of a tortious character, for which the carrier is liable in damages."

4. The court did not err in giving in charge to the jury that part of section 4397 of the Civil Code which relates to nominal damages, though it was error to read to the jury that part of the same section which relates to tender to the plaintiff and which relieves the defendant of costs where the tender is of a sum equal to or more than the plaintiff recovers. There was no evidence that the defendant tendered any amount in settlement of the plaintiff's claim for damages, either before or after the suit; and the charge

as to tender was therefore inapplicable. However, it does not appear how it would have been possible for the instruction upon this point to prejudice the rights of the defendant, either by inducing a finding in favor of the plaintiff, or in affecting the amount of the verdict. This error, therefore, must be treated as harmless.

5. It is complained that instructions of the court, set out in the 8th ground of the motion for a new trial, authorized the recovery of double damages, and infringed the rule laid down by the Supreme Court in *Southern Railway Co.* v. *Jordan, 129 Ga.* 665 (59 S. E. 802), and in other cases. These instructions are as follows: "General damages are such as the law presumes to flow from the trespass or wrongful act, and may be recovered without proof of any specific amount. Such damages are such as mental and physical pain and suffering; and the guide in determining those damages is the enlightened conscience of impartial jurors, acting under the sanctity of their oaths, to compensate the plaintiff with perfect fairness to the defendant. In addition to the general damages, as just explained, I charge you the plaintiff in this case claims that because of the circumstances out of which the damages accrued, he is entitled to what is known as punitive damages. In every tort, as I have stated, there may be aggravating circumstances; and if the jury finds that there were such aggravating circumstances, they may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff. But to authorize the finding of punitive or exemplary damages, the jury must be satisfied from the evidence that there was some wilful misconduct upon the part of the employee, or that there was entire want of care by the employee, which would give rise to the presumption of a conscious indifference to consequences. There must be evidence, satisfactory to the jury, either of malicious wantonness or an oppression by the employee as against the person claimed to have been damaged. In some torts the entire injury is to the peace, happiness, or feelings of the plaintiff. In such case no measure of damages can be prescribed except the enlightened conscience of impartial jurors." Punitive damages, as a species, are properly included in the genus "general damages," and we see no error in the court's defining what is meant by general damages, in the language of the code (Civil Code, § 4507), and then telling the jury that damages for

mental and physical pain and suffering are to be measured by the enlightened conscience of impartial jurors; and although the court should not have told the jury that "in addition to the general damages, . . the plaintiff claims that because of the circumstances out of which the damages accrued, he is entitled to what is known as punitive damages," still, since the recovery in this case can only be adjudged to be a finding of punitive damages (there being no attempt to show any actual damage), we do not think that the use of the words, "in addition," requires the grant of a new trial. The plaintiff was entitled to have the jury instructed that the defendant was liable for any wanton misconduct of its agents or employees, or mistreatment of the plaintiff.

6.   In the 9th ground of the motion for a new trial complaint is made that the court misstated the contention of the defendant, to its prejudice. The charge complained of in this ground is as follows:, "The contention of the railroad company is that when fare was demanded of the plaintiff, there were some words between him and the conductor of the defendant railroad company's train, and that language was used upon the part of both that was sufficient to anger and enrage both of them, and that when they got to Blackshear the conductor demanded that the plaintiff leave the train, which he did. This is the contention of the railroad in this case; and if you find that to be true,—that the parties had not paid their fare from Waycross to Offerman, and that they were approached in a genteel and respectful way by the conductor, and asked to pay or get off the train, and that this enraged him, and that he then used language to the conductor that was not proper and right, and that a reasonable request was made to the plaintiff by this conductor or employee of the defendant company, and you find that there was wilful determination by the plaintiff to resist such reasonable request of the employee of the company, and in that determination the plaintiff was guilty of wrongful conduct, and by such conduct so exasperated the employee of the defendant railroad company, the said conductor, as to unfit him from properly performing the duty which the conductor owed to his company with respect to the employee's treatment of the company's patrons, then the passenger (the plaintiff in this case) can not justly complain that the conductor lost his temper and resorted to unnecessary force."

This instruction is not subject to the objection urged, that the court expressed or intimated the opinion that the evidence showed that the conductor lost his temper and used unnecessary force; nor could the jury have inferred from it that the court was of the opinion that the plaintiff was a passenger at the time he was ejected. The statement of contentions was not correct so far as it attributed to the defendant the contention that its conductor lost his temper and used unnecessary force toward the plaintiff, though the conductor testified that he called the plaintiff "a damned liar;" and the court should not have told the jury that if the conduct of the plaintiff so exasperated the conductor as to unfit him for the proper performance of his duty, the plaintiff could not justly complain that the conductor lost his temper and resorted to unnecessary force; for this was not a correct statement of the law (see *Mason v. N., C. & St. L. Ry.*, 135 *Ga.* 741 (70 S. E. 225, 33 L. R. A., N. S., 280), but the instruction was favorable to the defendant, and not to the plaintiff; and the defendant will not be heard to complain of an instruction which was to its advantage.

7. The court refused requests to give certain cautionary instructions including a statement that "The defendant company is entitled to the same fair and just treatment at your hands as though it was a private individual and neighbor of yours engaged in the same business." There was also a request that the jury be instructed that they were not authorized to arbitrarily disregard the evidence of the employees of the defendant company; and in another request the court was asked to tell the jury, "In determining what amount your verdict shall be, you should not increase it one penny because of the fact that the defendant is a railroad company." After a review of the charge of the court as a whole, we find no error in the omission to give to the jury the instructions requested. None of the requested charges are wholly free from defect, and it is well settled that where the court is requested to give an instruction in terms set out in the request, it is not the duty of the court to sift the chaff from the wheat; and that when the requested instruction is in part a correct statement of law and in part defective, the court may refuse the request as a whole. The court could not tell the jury that the defendant company was entitled to the same fair and just treatment as though it were a private individual and "neighbor of yours" without suggesting

(greatly to the discredit of the jury) the thought that the jury would be influenced by the fact that one of the parties was a neighbor, and thus assuming that the jury could be influenced by unworthy considerations. As a matter of law, it is true that the jury are not authorized to arbitrarily disregard the evidence of any witness because he is, or was at the time the cause of the action arose, an employee of a railroad company which is the defendant in the action; and the trial judge may, in his discretion, so instruct the jury; but since the credibility of witnesses is at last a matter for determination by the jury only, the discretion of the trial judge in charging upon this subject should be sparingly exercised; and a failure so to instruct the jury would not be ground for reversal, unless there was a manifest abuse of discretion. It is always dangerous to clothe instructions to the jury in such language as to suggest that the jury will possibly be influenced by relationship or friendship.

8. The controlling issue in this case was whether the plaintiff had paid his fare between Uptonville and Offerman. If he had paid it, the conductor had no right to demand fare or to eject the passenger until he reached his destination; and if, in demanding payment of fare, he insulted the passenger, humiliated him, or wounded his feelings, the company would be liable for the tort. The evidence authorized the jury to find that the plaintiff had paid full fare, and that he paid no attention to the receipts, and was not aware of their contents. The plaintiff's statements, so far as they were material, were contradicted by testimony in behalf of the defendant; but this presented an issue which it was the exclusive prerogative of the jury to decide. And since the verdict is moderate in amount, and was approved by the trial judge, the finding of the jury should not have been set aside, unless it was apparent that some error was committed which induced or contributed to the conclusion reached. *Judgment affirmed. Roan, J., absent.*